No. 9950.

## SUCCESSION OF OCTAVE J. FORSTALL.

The sale or transfer of a note secured by a special mortgage and vendor's privilege carries with it both the mortgage and privilege.

This right accrues to the purchaser by mere operation of law, and is not dependent upon the articles of the Civil Code, which treat of payment with subrogation, legal or conventional.

The right is acquired by the purchaser, even if the payment of the note, which is in suit by executory process, is made to the sheriff; provided, the contract be shown to be one of purchase between the seizing creditor and the transferrees of the note.

In a sale of an immovable, burdened with a mortgage and vendor's privilege, belonging to a succession, no other claim or charge can be preferred to the vendor's privilege out of the proceeds of the sale, but the expenses incurred for making the sale.

In the case of a sale of succession property, burdened with mortgages, by executory pro-cess, the purchaser at such sale cannot be compelled to turn over to the succession rep-resentative the amount of ranking special mortgages, which he is entitled to retain, after satisfying the junior mortgage of the seizing creditor.   Morris vs. Cain, 34 Ann. 657.

But if the unsatisfied mortgages are general, the residue of the purchase price cannot be retained by the purchaser, and the same must be paid over to the succession representa-tive to be administered upon.   Teissier vs. Bourgeois, 38 Ann. 256.

A natural tutrix, administering in that capacity the succession of her husband. is entitled to administrator's commissions.

A PPEAL from the Civil District Court, for the Parish of Orleans.
    *Monroe, J.*

### *W. E. Murphy,* for Opponent and Appellee :

1.   The C. C. Art. 3237 grants a vendor's privilege on the property sold for the payment of the price, or so much of it as is due, whether sold for cash or on credit.

2.   This is a right which springs from the nature of the debt, and by force of law is em-bodied in the contract.

3.   It is also a right of very high character conferring advantages superior to those which flow from a mortgage.

4.   Although a renunciation of rights of this character may be implied, it must be held by sound principles of interpretation, should be established, not by doubtful, but by clear and cogent inferences from the acts of the parties.   Boner vs. Mahlé, 3 Ann. 600, and authorities there cited, a leading case on this subject.

5.   *Nemo facile præsumitur donare*.   Merlin expresses, with his usual accuracy, the just rule for interpretations of renunciations.   " Les renonciations se font de deux manières, expressément, et par des faits.   Mais pour que les faits emportent, il faut qu'il en ré-sulte une volonté manifeste de renoncer, c'est-à-dire, que ces faits soient directement et à tous égards contraires et au privilège dont il s'agit."   Merlin, Verbo Renon, § 3; Duranton, vol. 10, § 158.

6.   Even a release of a special mortgage to secure the vendor the payment of the debt does not effect the vendor's privilege.   Citizens' Bank vs. Curry, 12 R. 279 ; Suc. Johnston, 3 R. 217; Howard & Thomas, 3 L. 112.

7.   The burden of proof as to the renunciation falls on the party holding the affirmative.   The tutrix in this case representing the deceased is estopped from denying her husband's contract to subrogate opponent.

8   The tutrix claiming $1000 from the succession, under the Homestead clause, is not en-titled to commissions, all she can take from the creditors is the $1000 allowed by law. R. S. p. 333, sec. 1693.   As tutrix, she is entitled to a commission on the minors' revenue. C. C., Art. 349 ; Suc. of Weber, 16 Ann. 420.

### *Sambola & Ducros,* for the Tutrix and Appellant :

1.   Legal subrogation is *stricti juris,* and can take place only in cases expressly provided for by law.   11 Ann. 435 ; C. C. 2161, 2645 ;  3 Larombiere, pp. 180, 301 ; 1 Troplong, Priv. No. 349; 4 Marcardé, Nos. 704, 710; 7 Toullier, Nos. 102, 139; 12 Duranton, No. 180; 2 Zachariæ, p. 376.

2.   Conventional subrogation is not presumed ; it must be express, unequivocal, and made in writing and at the same time as the payment; and only by notarial act, when made by the debtor.   C. C. 2159, 2160; 12 Duranton, Nos. 117, 118 ; 3 Larombiere, pp. 194, 215 ; 7 Toullier, Nos. 116, 117, 121 ; 5 R. 207; 11 Ann. 295 ; 30 Ann 23 ; 9 R. 476.

3.   Facts, not alleged by a litigant, are inadmissible in evidence.   C. C. 2161; 9 Ann. 120 ; 24 Ann. 158 ; 14 Ann. 356 ; 12 Ann. 77 ; 9 R. 477.

4. An administrator cannot justly be charged with uncollected funds, which the action of the law and of the complaining party himself has put it out of his power to receive. C. P. 679, 683; 2 L. 280; 12 Ann. 592; 34 Ann. 662.

5. A widow and natural tutrix, administering and settling, *us nominibus*, the insolvent estate of her husband, is entitled to an administrator's commission. C. C. 1044, 1069; 1 Zachariæ, § 40; 1 R. 400; 7 Ann. 212; 34 Ann. 40.

6. An appellate court has no power to review the judgment of the lower court as to appellees *inter sese*. C. P. 888, 889; 2 Ann. 548, 994; 12 Ann. 775; 11 Ann. 546; 16 Ann. 195; 18 Ann. 265; 20 Ann. 123; 23 Ann. 456; 25 Ann. 508; 26 Ann. 542; 32 Ann. 190.

The opinion of the Court was delivered by

POCHÉ, J.  The principal contention presented in this appeal grows out of the opposition to the account and tableau of distribution of the natural tutrix administering in that capacity the succession of her husband, interposed by James P. Guinault, as the holder of twenty-two notes, amounting together, in capital, to $1900; and originally secured by a special mortgage and vendor's privilege on an immovable, the proceeds of which constitute the principal asset of the succession.

He complains that, in her proposed distribution, the tutrix has recognized him as a privilege creditor for the amount of only eleven of the notes which he holds, treating him as an ordinary creditor for the amount of the eleven others; and he also charges error in the omission of the tutrix to include as an asset of the succession the sum of $910 87, the residue of the adjudication of another immovable belonging to the succession, which had been sold under executory process at the instance of opponent, as the holder of a mortgage, second in rank, on said property.  He finally resists the amount claimed by the tutrix as administrator's commission, as well as the fees allowed to the attorneys and to the notary of the succession, which he alleges to be excessive in amount.

The tutrix appeals from a judgment which recognizes the opponent as a privilege creditor for the full amount of his twenty-two notes in capital and interests, and orders the proceeds of the property sold under executory process to be charged as an asset of the succession, or as much of the same as may be necessary to satisfy the claim propounded by the widow under the provisions of act 171 of 1852, now article 3252 of the Civil Code.  The judgment also rejects her claim for commission as administratrix, and finally homologates her account as thus amended.

The first point of discussion involves the proposed reduction of opponent's privilege by one-half.  Appellant's position on this point will be best understood by a reference to the facts which gave rise to the contention.

It appears that a short time previous to the death of Forstall, the holder of the twenty-two notes, eleven of which had then matured, took out a writ of seizure and sale of the property subject to the mortgage and vendor's privilege, by which the notes were secured, and that before the date fixed for the sale, at the instance of Forstall and with the consent of the seizing creditor, the opponent (Guinault) purchased the entire series of the notes on which execution had issued, for the purpose of assisting and befriending Forstall, whose home was thus saved to him.   In order to avert and suspend the sale which was to have taken place on the very day that the transaction was consummated, the amount of the eleven matured notes in capital and accrued interests, together with costs thus far incurred, was paid into the hands of the sheriff, and that a few days later, as soon as the notes could be legally withdrawn from the files of the court, the purchase price of the eleven notes was paid to the attorney of the seizing creditor, who had been vested with full authority by his client to carry out the agreement of the parties, and who thereupon delivered the entire series of notes to Guinault, the purchaser, to whom he executed a conventional subrogation of the rights of mortgage and privilege securing the eleven matured notes, the payment of which was therein stipulated to have been made as hereinabove stated.   Relying on that circumstance and on the alleged fact that this instrument was not executed on the day that payment was made, coupled with the fact that in his return on the writ the sheriff stated that he had received the amount which the writ called for from the debtor Forstall "through Jas. P. Guinault," appellant makes the point that the transaction thus evidenced was, in fact and in law, a payment by the debtor of the eleven matured notes, under the operation of which the vendor's privilege was extinguished and cancelled, and that therefore the attempted subrogation of such defunct rights was, and must be treated as, an absolute nullity.

Under our reading of the record  the evidence shows clearly and conclusively that the transaction · which resulted from the negotiations carried on by Forstall and Guinault with the duly authorized counsel of the seizing creditor, and in consequence of which Guinault acquired the possession of the twenty-two notes in question, was one of purchase.

Hence, we hold that the rights which he acquired as purchaser and transferree could not be in law, and were not in fact, affected by the mode, awkward it was, adopted of making the payment of the eleven matured notes and of the costs incurred in the executory proceedings.

The practical result of the transaction was, as shown by the record, that the seizing creditor, as vendor, received the price of his notes, and that the purchaser received the notes, which he bought, in their full legal and intrinsic value.

The securities which were thus transferred to him, together with the notes, were the special mortgage and vendor's privilege with which they were duly identified. Those rights are secured to him by the very text of the law.

Article 2645 Civil Code reads: " The sale or transfer of a credit includes everything which is an accessory to the same, as suretyship, privileges and mortgages."

Hence, our jurisprudence has invariably enforced the rule that the mere transfer of a note secured by mortgage carries with it the mortgage itself. In such a transaction the articles of the Code which treat of the payment with subrogation have no application, as the right acquired by the transferree derives from another and a different provision of law. Oakley vs. Sheriff, 13 Ann. 273.

It follows, therefore, that the accessories of the notes which Guinault acquired were vested in him by the mere operation of law, without reference to the attempted conventional subrogation evidenced by the instrument executed by the seizing creditor's attorney and agent, which was mere surplusage. As such it can add to, or detract no strength from, the legal rights which Guinault acquired under his purchase.

It is plain, under our well-settled jurisprudence that, on presenting his notes, with authentic proof, as was the case here, that they were made payable to the order of, and indorsed by, the drawers, with a copy of the sale with which they were identified, to a court of competent jurisdiction, he would have been irresistibly entitled to executory process to enforce payment thereof.

Hence, his rights to a mortgage and vendor's privilege are perfect in law, and must be enforced. Race vs. Bruen, 11 Ann. 34; Scott vs. Turner, 15 Ann. 346; Seckel vs. Fried, 18 Ann. 192; Frost vs. McLeon, 19 Ann. 80; Perot vs. Levasseur, 21 Ann. 529; Miller vs. Cappel, 36 Ann, 264.

On the second branch of the controversy, the record shows that the purchaser of the immovable sold under the executory process in the suit of Guinault vs. Forstall, after paying the amount of the seizing creditor's claim, costs of suit and taxes, retained in his hands the sum of $910 87 to meet the payment of a special and ranking mortgage affecting the property sold, and an additional sum of $170 96 on ac-

count of a tacit mortgage recorded in favor of the minor children of the deceased, against their mother, the accountant.

Under our well-settled jurisprudence the succession representative was without legal right to claim from the purchaser the amount retained by him on account of the special ranking mortgage Morris vs. Cain's executors, 34 Ann. 662.

But she had the right, and it was her duty, to claim and recover the amount retained by the purchaser on account of the general mortgage in favor of the minors. Tessier vs. Bourgeois, 38 Ann. 256.

This is conceded by her counsel, and they argue that the account should be credited with the additional sum of $170 96, as it appears, as a result of the developed insolvency of the succession, that the inscribed mortgage of the minors, resulting from the abstract of the inventory, lapses and is without effect.

We, therefore, conclude that the district judge erred in treating the entire proceeds of the sale as an asset of the succession; that part of his judgment covers only $170 96.

At this stage of the case comes the practical conflict between the opponent, Guinault, in the enforcement of his rights of vendor's privilege on the proceeds of the immovable subject thereto, and the widow's claim of $1000 under the act of 1852. The total assets of the succession are insufficient to satisfy both and the funeral and law charges and other privileges recited and contained in the account.

Under the provisions of the act of 1852, the claim therein created must " be paid in preference to all other debts, except those for the vendor's privilege and expenses incurred in selling the property."

Hence, it follows that the only debts or charges which can be preferred to opponent's privilege are the costs of the sale of the property subject to his mortgage. Now the record informs us that the judicial costs incurred for that sale amount to $90 90, and that the property was liable for taxes amounting to $75 95.

Beyond this the record is silent, and we are not informed of the items which make up the amount of costs as above stated. But we are authorized to conclude that the total amount consists of the clerk's and sheriff's fees, appraiser's charges, advertisement of sale, etc., and these, we hold, are the only costs which can rank the vendor's privilege. Succession of P. O. Lauve, 18 Ann. 721; Succession of Markey, 2 Ann. 265.

The judgment appealed from is in accord with these views, although it does not detail the charges which are allowed; these must be restricted to the two items hereinabove enumerated,

67

Protected by that decree, opponent has no concern with the amounts allowed for attorneys' and notary's fees, for the reduction of which he has filed a prayer to amend the judgment. And as the other creditors of the succession have not appealed, the judgment in that particular cannot be reviewed by us in the present appeal.

We do not approve of the conclusion reached by the district judge on the claim of the tutrix for commissions of administration, which was rejected in the judgment appealed from.

The right of a natural tutrix to such commissions has been judicially recognized. Succession of De Lerno, 34 Ann. 40. Hence we shall allow them, but they are inferior in rank to opponent's privilege.

It is, therefore, ordered, adjudged and decreed, that the judgment appealed from be amended in the following particulars:

1st. By reducing the amount of the proceeds of the property sold under executory process in the suit of Guinault vs. Forstall, to be accounted for by the natural tutrix, to the sum of $170 96.

2d. By allowing to accountant administrator's commissions, under the restrictions hereinabove stipulated.

And it is now ordered that said judgment, as thus amended, be affirmed at the costs of Jas. P. Guinault, opponent on appeal.