Nick **LJEPYA** and Chris Ljepya, Jr.,
Plaintiffs,

v.

**M. L. S. C. PROPERTIES** et al.,
Defendants.

No. C-72-2003.

United States District Court,
N. D. California.

Jan. 18, 1973.

Judgment Jan. 19, 1973.

James W. Funsten, San Francisco, Cal., for plaintiffs.

Robert J. Williams, San Jose, Cal., for defendants Paulson and Lopes.

John A. Colistra, San Rafael, Cal., and Sanford N. Diller, San Jose, Cal., for defendants M. L. S. C. Properties, Inc., Mortgage Loan Servicing Corporation, HLC Financial, and certain individual defendants not otherwise represented.

OPINION

WYZANSKI, District Judge, sitting by designation.

The issue is the meaning of the term "itemized" as used in § 1639(a)(2) of Title 15 U.S.C., referred to as the Federal Truth in Lending Act or The Consumer Protection Act, 15 U.S.C. § 1601 et seq. This court has clear jurisdiction. 15 U.S.C. § 1640(e).

Plaintiffs, landowners, are borrowers; defendant Lopes, a real estate agent, acted for them and for defendant Paulson, a real estate broker, and defendants HLC and M.L.S.C. Properties, Inc. which created a trust to hold a mortgage for the

benefit of numerous individual defendants. These are the circumstances.

Plaintiffs are brothers, each having only grade school education, but having jointly acquired through inheritance a 16 acre tract of land which, because of the possibilities of development into 15 (not 16) one-acre lots for dwelling houses, has had, since at least 1970, a market value of about $225,000. Plaintiffs had placed some time ago a first mortgage of somewhat over $93,000 on their land. Then, after an earlier second mortgage, which had been paid off, and which is not relevant to this case, plaintiffs, in January 1971, placed through Arms, a real estate broker, an $18,000 second mortgage with one of Arms' customers.

Plaintiffs were delinquent in paying interest on their new second mortgage. Solely to accommodate his customer, Arms, through his wife, took from that customer an assignment of that new $18,000 second mortgage, and then recorded a notice of default. Plaintiffs wrongly supposed that Arms was scheming to foreclose to deprive them of their property.

Responding to defendant Lopes' inquiry, plaintiffs in late April and early May 1972 pressed him to secure a new second mortgage so that they could pay off Arms. On May 9, asserting that there were grave difficulties, Lopes (acting not only for plaintiffs but for his constant associate, defendant Paulson, a real estate broker, and simultaneously for defendant HLC and its parent corporation, M.L.S.C. Properties, Inc., which, as part of a conglomerate, were in the business of setting up trusts in mortgages and disposing of participations in those trusts to individual beneficiaries such as all the defendant individuals herein except Lopes and Paulson) represented that he could not get the mortgage which plaintiffs sought unless they paid, in addition to the commission to Lopes and his principal, the broker Paulson, an additional commission to HLC for getting the beneficiaries of its trust to invest in the mortgage. On that May 9 Lopes did not disclose that the double commissions for a $24,000 mortgage would be $6,120 to HLC Financial and $5,400 to Paulson, doing business as Paulson Mortgage Company, or a total of $11,520, or 48% of the principal amount of the second mortgage. Nor did Lopes or Paulson or HLC ever explain to plaintiffs that the commission to Paulson was for placing the mortgage, and the other commission to HLC was for securing investors to participate as beneficiaries in a mortgage of which HLC and its affiliates would be trustees.

May 11 Lopes prepared, and he and plaintiffs executed, a disclosure statement pursuant to the Federal Truth in Lending Statute. That statement, in reference to the standard question as to bonuses, brokerage, and commissions, stated merely "HLC Financial $6,120, Paulson Mtg. $5,400." The statements were true so far as they went, but they concealed, deliberately it seems to this court, the fact that the commission to Paulson was for placing as plaintiffs' agent their mortgage, and that the commission to HLC was for its role in accepting the mortgage as trustee for individual beneficiaries who had been encouraged by HLC and its affiliates to make an investment as beneficiaries of the mortgage.

Plaintiffs did not realize when they executed the disclosure statement that Lopes was procuring commissions from persons with adverse interests and that in combination these commissions were unusual if not improper in character because of the conflict of interest, and that the commissions in combination were oppressive because in total they amounted to 48% of the amount of the mortgage at a time when, as Arms' wholly credible testimony shows, the property covered by the mortgage had a value far in excess of the combined amounts of the first and second mortgages and at a time when because of the demand for the property for developmental purposes, a second mortgage of $24,000 could have been procured for a 10% rather than a 48% commission to brokers.

Upon the basis of the foregoing facts, which are so shocking as by themselves to justify the statute here applied, the court concludes, as a matter of law, that the disclosure of the commissions in this case did not satisfy the statutory requirement of an "individually itemized" statement of "charges." 15 U.S.C. § 1639(a)(2).

This is not a case where two agents or brokers for a seller or mortgagor split one commission or got two commissions for their respective parts in performing the same function. Here the two so-called brokers were acting for different and adverse interests. But the adversary interest or conflict was not disclosed. The general description "brokers commissions" under these circumstances was not merely misleading, it was not an "itemized" statement of charges within the contemplation of the statute. The purpose of the statutory requirement and particularly of the subsection here involved is to disclose to the customer, here the mortgagor, just what it is for which he is paying (as well, of course, as how much he is paying for that particular service or function). Here the disclosure statement wholly fails to accomplish that end. It was, it seems, part of a deception to cover up an extortion and a conflict of interest.

Plaintiffs are entitled to rescission, upon repaying within 10 days of judgment the principal of the second mortgage loan (but not the interest or other charges) together with such sums as the evidence indisputably shows that the second mortgagee has recently paid to the first mortgagee to prevent it from foreclosing the first mortgage. 15 U.S.C. § 1635.

Plaintiffs also shall recover $3000 in damages, that is $1000 each from defendant Lopes, the triple agent, (that is, of plaintiffs, Paulson and the combination of HLC and its parent) from defendant Paulson, the real estate broker, and from defendants HLC and its parent, jointly, as a conglomerate placer of the mortgage in a trust for the benefit of certain individual investors. 15 U.S.C. § 1640(a)(1).

■ Plaintiffs' attorney having reasonably devoted 100 hours effectively to the preparation and trial of this complicated and novel case, plaintiffs are also entitled to judgment imposing upon defendants Lopes, Paulson, and the combination of HLC and its parent additional joint liability of $3000 in attorneys' fees, plus court costs assessed by the clerk. 15 U.S.C. § 1640(a)(2).

So ordered.

## JUDGMENT

Pursuant to the court's oral statement of its findings of fact and conclusions of law dictated in open court on January 16, 1973 and the court's supplementary written opinion filed January 18, 1973, it is hereby ordered that:

1. Provided that within ten (10) days of the entry of this judgment, plaintiffs, Nick Ljepya and Chris Ljepya, tender to defendants M.L.S. Properties, Inc., Mortgage Loan Servicing Corporation, and Paul O. Paulson the total amount composed of (a) the somewhat over $24,000 which is the principal amount of the second mortgage given by plaintiffs on May 11, 1972, and (b) such payments as between May 11, 1972 and January 17, 1973 defendants, by an affidavit filed with the clerk of this court on or before January 24, 1973, prove they made to the first mortgagee on account of its lien upon the subject property involved in this case owned by plaintiffs, plaintiffs shall recover the aforesaid property free and clear of the aforesaid second mortgage, which shall be cancelled forthwith by such defendants as may hold it either for their own benefit or for the benefit of others.

2. Plaintiffs recover forthwith:

(a) From defendant Norman V. Lopes one thousand dollars ($1,000);

(b) From defendant Paul O. Paulson one thousand dollars ($1,000); and

(c) From defendants H.L.C. Financial, M.L.S.C. Properties, Inc., and Mortgage Loan Servicing Corporation, jointly

and severally, a total of one thousand dollars ($1,000).

3. Plaintiffs recover forthwith from defendants Norman V. Lopes, Paul O. Paulson, H.L.C. Financial, M.L.S.C. Properties, Inc., and Mortgage Loan Servicing Corporation, jointly and severally, a total of (a) three thousand dollars ($3,000) on account of plaintiffs' attorneys fees together with (b) the normal court costs, as assessed by the clerk of this court.

4. All other relief sought by any party in either the original or cross-action or third party action is denied without further costs.