Ronald **STARKS** et al., Plaintiffs,

v.

**ORLEANS MOTORS, INC.** and Colonial **Bank**, Defendants.

Civ. A. No. 73–1427.

United States District Court,
E. D. Louisiana.

Feb. 11, 1974.

Patrick D. Breeden, New Orleans, La., for plaintiffs.

Edward J. DeMartini, New Orleans, La., for defendant Colonial Bank.

Carl J. Barbier, New Orleans, La., for defendant Orleans Motors, Inc.

ALVIN B. RUBIN, District Judge:

Ronald Starks purchased a used 1970 Ford automobile from Orleans Motors, Inc.; Colonial Bank "handled the financing" for the sale. Initially Starks agreed to purchase the automobile for $1795. He made a cash deposit of $100. When taxes, license fee, and a fee for transferring title of the car were added to the cash price, and the $100 deposit was credited, the unpaid balance was $1805. After this agreement was reached, a representative of Orleans called Dale Black, Vice-President in charge of installment loans with Colonial Bank, to see whether Colonial would lend Starks the money necessary to pay the unpaid cash balance. Black advised Orleans that Colonial would not lend more than $1500 on the vehicle. This information was given to Starks, and the proposed sale was cancelled.

Since Starks still desired to purchase the auto, he and Orleans reached a new agreement whereby Starks was to make an additional cash deposit of $50 and Orleans was to lower the price of the auto to a total of $1650. This would leave an unpaid cash balance of $1500 after the deposit was credited against the purchase price. Orleans then prepared a chattel mortgage, naming itself as mortgagee, a note, and disclosure statement, which were signed by Ronald and Gilda Starks. Orleans then called Black a second time to see whether Colonial would make a loan for the unpaid cash balance. Black told Orleans that Colonial would not lend this amount unless Starks had at least two endorsers for the note and chattel mortgage.

Another attempt was then made to meet Colonial's requirements. Orleans prepared a second note, chattel mortgage (naming itself mortgagee) and disclosure statement; these were signed by Starks and two endorsers at Orleans' place of business. Orleans delivered the papers to Colonial, and executed an assignment of them to Colonial. Colonial then began the necessary procedures to have the $1500 credited to the account of Orleans, and Starks took possession of the auto. The bank also credited a portion of the finance charge, $94.59, to a reserve account it maintained in Orleans' name as a commission for placing the loan with it.

It is Mr. Starks' contention that both defendants violated the Truth in Lending Act (15 U.S.C. § 1601 et seq.) and Regulation Z promulgated thereunder (12 C.F.R. § 226 et seq.) in failing to indicate on the required disclosure form that they held a vendor's privilege on the car (L.S.A.–C.C. art. 3227). In addition, Orleans is alleged to have failed properly to disclose certain charges in connection with the transfer of license and title.

## I. Truth in Lending

The Truth in Lending Act has two purposes: to avoid the uninformed use of credit through disclosures, and to enable borrowers to "shop" effectively for credit by comparing the information found in the creditors' disclosures. Regulation Z makes the scope of the act clear in its preamble: "[T]his part applies to all persons who in the ordinary course of business regularly extend, or offer to extend, or arrange, or offer to arrange, for the extension of consumer credit. . . ." 12 C.F.R. § 226.-1(a)(1).

Colonial was of course a creditor in every legal sense, as well as within the meaning of the Act. In addition Orleans was an arranger for the extension of credit, since it received a fee from the Colonial Bank for loans routed to the bank by it; as an arranger it was also a creditor within the meaning of the regulations. 12 C.F.R. § 226.2(f) and (m).

## II. The Vendor's Privilege

Defendants argue forcefully that the instant transaction did not give rise to a vendor's privilege; hence there was no need to mention it in the disclosure form. They theorize that this was in fact a cash sale from Orleans to plain-

tiff, with Colonial lending plaintiff the money that he needed to make his purchase, and that no privilege arose. If this were an accurate statement of what happened, no privilege would have arisen from the purchase.

■■ ·But this version does not comport with what happened. Plaintiffs gave their promissory note and a downpayment to Orleans in return for the car. Orleans also retained a chattel mortgage to secure payment of the note. It was only when Orleans assigned the note and mortgage to Colonial that it received payment for the auto. Nor does it comport with the form of transaction the parties chose to describe in the documents that they prepared. A disclosure ·statement was drawn indicating that a loan was obtained to pay for the car. The disclosure shows that the loan was "*by* Orleans Motors, Inc." and "for Ronald Starks." The mortgage note, while payable to bearer, was endorsed by Orleans, *as mortgagee*. The chattel mortgage clearly states that Orleans, not Colonial, is the mortgagee. On its reverse side, the mortgage specifically says that the taking of the mortgage does not operate as a waiver of the vendor's privilege held by the mortgagee.

Nor is it accurate to say that, despite these contrary indicia, the parties did not intend a credit sale, for, as noted above, the disclosure statement itself recites that this loan was *to be assigned* to Colonial, not negotiated directly with Colonial. This was a credit sale under Louisiana law and, Orleans, as vendor, retained in law what it recited it had in the chattel mortgage: a vendor's privilege for the remainder of the purchase price when it assigned the note to Colonial. Colonial acquired the privilege as an accessory of the debt. L.S.A.–C.C. art. 2645; Perkins v. Gumbel, 1897, 49 La. Ann. 653, 21 So. 743; Succession of Forstall, 1887, 39 La.Ann. 1052, 3 So. 277; National Collection Serv., Inc. v. Woodward, La.App. 2 Cir. 1959, 111 So. 2d 189. Louisiana law of course determines only whether a security interest arose; for purposes of applying Truth in Lending we must characterize the transaction as prescribed by Regulation Z.

Section 226.8(b)(5) of Regulation Z requires disclosure of "any security interest" retained by the creditor, and section 226.2(z) includes within the definition of security interest "any interest in property which secures payment . . . of an obligation. The terms include . . . vendor's liens in . . . personal property. . . ." This embraces a vendor's privilege of the kind that arose here. .

■ Liability for failure to disclose a *statutory lien* attaches alike to the creditor and the arranger for the extension of credit who have participated in the making of a joint disclosure. 12 C.F.R. § 226.6(d). Therefore, Orleans and Colonial must each bear the responsibility for this omission.

■ It makes no difference that this error was unintentional and made without wilful purpose to mislead. Although these factors might have some weight were we faced with possible criminal penalties under the Act (28 U.S.C. § 1611), the reference to "unintentional error" in section 1640(c) has been held to apply only to clerical error. Palmer v. Wilson, N.D.Cal.1973, 359 F.Supp. 1099; Douglas v. Beneficial Finance Co., D. Alaska 1971, 334 F.Supp. 1166; Buford v. American Finance Co., N.D.Ga.1971, 333 F.Supp. 1243; Ratner v. Chemical Bank New York Trust Co., S.D.N.Y. 1971, 329 F.Supp. 270. But see Thrift Funds of Baton Rouge, Inc. v. Jones, La.1973, 274 So.2d 150 (good faith misinterpretation of *state law*, not the Truth in Lending Act).

■■ We are asked to view the requirements of the Act liberally because here the defendants' disclosure of the existence of a chattel mortgage and "the disclosure of the mortgage on the automobile sufficed to comply with the intent and purpose of the Truth in Lending Act and Regulation Z. . . ." But it is not enough to say that both a vendor's privilege and a chattel mort-

gage allow the creditor to seize the auto under a writ of sequestration. L.S.A.–C.C.P. art. 3571. Had the preparation of the mortgage failed to comply with the requirements of law, the court cannot believe that defendants would have hesitated to fall back upon their rights under the privilege. Disclosure of the one is not disclosure of the other.[1] Where the nature of an act is remedial, as here, it should be construed liberally in an attempt to provide the remedy, not avoid it. See Thomas v. Myers-Dickson Furniture Co., 5 Cir. 1973, 479 F.2d 740.

## III. License Fees

■ The question of Orleans' alleged improper disclosure of license and title fees is also raised. On the itemized sales order, a figure of $15 is noted, purporting to cover "license, license transfer, title, [and] registration fee." On the disclosure statement this figure is neither separately itemized nor listed as part of the finance charge, but has been included within the cash price. Orleans claims that the figure does not actually represent the money paid for the title, etc., but is a "charge" for a "service" that includes obtaining the necessary papers. However, any attempt to fit this service within the meaning of section 226.2(i), allowing inclusion within the total purchase price of certain services, must fail because the language of that section excludes charges described in section 226.4. Section 226.-4(b)(4) states that license, title and registration fees "need not be included in the finance charge" *if itemized.* The options are clear; nowhere is there allowance for inclusion within the cash price.

Nor does it meet the requirements of itemization that Orleans listed the $15 charge separately on the sales order. The total cost of license, title and registration fees in Louisiana is less than $15. Part of the $15 charge in fact represented compensation to Orleans. Had Orleans tried to rely on the sales itemization of $15, to the extent that figure exceeded actual license and title fees, there would be a "hidden finance charge" that must be included within the total finance charge. 12 C.F.R. § 226.8(c)(8). In addition, any itemization must be on the disclosure statement, not on a separate document such as a sales order. 12 C.F.R. § 226.8(a).

## IV. Damages

The Truth in Lending Act provides, "any creditor who fails in connection with any consumer credit transaction to disclose any" of the required information shall be liable for damages in the amount of twice the finance charge (not to exceed $1000) plus reasonable attorney's fees. 15 U.S.C. § 1640.

The finance charge found on the disclosure statement is $307.28. To this must be added the $15 "service" fee since, under section 226.4(b)(4), if not separately itemized, these charges are to be included within the finance charge. This gives a total finance charge of $322.28.

■ The court is aware that at least one case has allowed damages against each of several defendants where two of the defendants arranged the loan and a third defendant extended the credit. Ljepya v. M. L. S. C. Properties, N.D. Cal.1973, 353 F.Supp. 866. However, there it was found that the concealment was deliberate and intentional. The finance charge in that case was more than $11,500, but $1000 is the maximum damages allowed by section 1640. The award of $1000 against each defendant apparently was an attempt by the court to give the plaintiffs the maximum relief that could possibly be found using the most liberal interpretation of the statute. Even the $3000 ultimately

---

1. For the same reason, it is not correct to suggest that Starks was not damaged by nondisclosure of the vendor's privilege because he knew the automobile would be repossessed if he did not pay. He was entitled to be told exactly what security interests were retained and his ability to make a legally discriminating evaluation of the differences between one and the other is immaterial.

awarded was far less than the finance charge. Here the finance charge was $322.28. Twice that figure ($644.56) is well within the $1000 maximum. Thus there is no need for the court to look outside of the clear language of the section to ensure that the aims of the statute are satisfied. Nor does it appear necessary, in order to effect the purpose of the statute, to multiply penalties by the number of defendants. Accordingly, the court finds that the defendants Colonial Bank and Orleans Motors are liable jointly and severally to the plaintiffs for the sum of $644.56, twice the finance charge made for this loan.

The defendants are also responsible under the statute for reasonable attorney's fees. With respect to lawyer's fees, the Code of Professional Responsibility states: "[A]dequate compensation is necessary in order to enable the lawyer to serve his client effectively and to preserve the integrity and independence of the profession." It then states:

Factors to be considered as guides in determining the reasonableness of a fee include the following:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

Disciplinary Rule 2–106.

The court has several times reviewed the factors to be considered in fixing attorney's fees under similar statutes. Clark v. American Marine Corp., E.D. La.1970, 320 F.Supp. 709; Nelson v. Weinberger, C.A. No. 69–2646 (October 25, 1973); Jefferson v. L & I Corp., C. A. No. 71–2840 (June 25, 1973).

At the present time lawyers in New Orleans charge a fee of $35 per hour. Those with long experience or expertise in a particular area charge substantially more. Their overhead is continually rising.

Where the lawyer undertakes to prosecute a case on a contingent fee, as Truth in Lending Cases in general must be and this one was, the lawyer who recovers only a minimum fee if he prevails must lose money. Because inevitably he will recover nothing in some cases.

■■■ Defendants palter with respect to the amount of time effectively spent by plaintiff's counsel compared with the time shown on his time summary. But the court has observed the time required. Indeed, to some extent, the time expended was partially within the defendants' control. Their strenuous and able opposition exacted more time and greater effort from plaintiff's counsel. Confronted with a claim of this nature, defendants may properly elect to fight hard. But if they do and lose, they must pay what the statute commands.

■■■ Considering the time spent by plaintiff's counsel, the factors outlined above, the fact that trial on the merits (albeit eventually on stipulated facts) became necessary, I think a fee of $2000 is reasonable.