**Wendell JONES, Individually and on behalf of all others similarly situated**

**v.**

**The GOODYEAR TIRE AND RUBBER COMPANY d/b/a Goodyear Service Stores, a Division of Goodyear Tire and Rubber Company.**

**Civ. A. No. 76–2232.**

United States District Court, E. D. Louisiana.

Dec. 21, 1977.

As Amended Jan. 11, 1978.

Elliot G. Snellings, New Orleans, La., for plaintiff.

Chaffe, McCall, Phillips, Toler & Sarpy, Peter F. Liberto, New Orleans, La., for Goodyear Tire & Rubber Co.

ALVIN B. RUBIN, Circuit Judge.*

This Truth in Lending class action ought to be relatively uncomplicated. The fact questions with respect to whether it is a proper class action should have been readily discovered; the legal issues are not novel and should have been quickly briefed. Instead, it has developed into a battlefield for a protracted engagement with legal barbed wire spread over the once level terrain.

Having secured a class declaration, the plaintiff moves for summary judgment, supporting the motion by affidavits. The defendant opposes with a barrage of arguments but no Rule 56 material, ignoring the injunctions of that rule. It would be easy, therefore, to dispose of the matter, and to grant the judgment in toto because of the defendant's default. But due to the congested Fifth Circuit docket, the inevitable appeal may not be decided for two more years. When the record finally reaches that court, it ought to be complete. There-

* Sitting as District Judge by special designation of Chief Judge John R. Brown.

fore, resisting the temptation to impose a cessation to hostilities that may be only a truce, rather than an end to war, the motion will be granted only with respect to those matters concerning which the record is pellucid. A trial date will be set for all other issues. Meanwhile, the cost of conflict will inevitably continue to mount.

Each issue can be discussed separately in turn without an outline at the start.

## I.

## MATERIAL FACTS ESTABLISHED BEYOND GENUINE DISPUTE

The class representative, Wendell Jones, bought a television set for his personal use from Goodyear Tire and Rubber Company (Goodyear) on July 26, 1975. He was to pay for it in 17 monthly installments of $24.00, plus a final installment of $31.87, a total of $439.87. This was the sum of the purchase price of the television set, $298.65, the unpaid balance he owed Goodyear on an earlier purchase, $93.95, the finance charge, $44.26, and the premium for credit life insurance, $3.01. He signed a contract, captioned "Retail Installment Sale Agreement, Subject to State and Federal Regulations," which contained the disclosure statement.

The class representative was certified to represent a class composed of all individuals who entered into consumer credit transactions with the Goodyear Tire and Rubber Company during the period November 26, 1975 to November 26, 1976, or July 21, 1975 to July 31, 1975, at the Goodyear Service Store located at 4200 Chef Menteur Highway, in New Orleans, Louisiana. The same disclosure form was used for sales to all members of the class. The class contains 1372 persons. Its members have been notified, and 157 persons have opted out.[1]

## II.

## WAS EACH TRANSACTION A CONSUMER TRANSACTION?

Truth in Lending disclosures are required only for consumer transactions. 15 U.S.

C.A. § 1603, 12 C.F.R. (Regulation Z), § 226.3. Goodyear contends that some of the plaintiffs were not consumers. Neither party has supported its position adequately. Within 45 days, the plaintiff will furnish Goodyear with a list of class members, and an affidavit that each member is, or is not, a consumer with respect to his or her Goodyear transaction. Within 30 days, Goodyear will review the list and notify the court whether it contests any designation. Where a class member concededly participated in a consumer transaction, that member shall be entitled to share in any relief ordered under the Truth in Lending Act. Where a class member concededly was not a consumer, he shall be excluded from any such relief. The magistrate shall hold an evidentiary hearing on disputed designations and make a report and recommendations.

## III.

## FAILURE TO DISCLOSE THE VENDOR'S PRIVILEGE CREATED BY LOUISIANA LAW

In the disclosure form, Goodyear describes the security interest retained by it with respect to the purchaser's property as follows:

I hereby grant to Goodyear a security interest in each item of merchandise purchased or hereafter purchased under this Agreement and Goodyear shall retain such security interest in each item of merchandise until it is paid for in full.

\* \* \* \* \* \*

Goodyear retains a security interest in the subject matter of this agreement.

But the disclosure statement does not in any way describe or identify the type of security interest retained. The plaintiff contends that, because Goodyear was a seller of corporeal "movable property," a statu-

---

1. Some members of the class have not received notice, and, when they do, there may be others who opt out.

tory vendor's privilege was created by LSA–C.C. art. 3227. Goodyear concedes, in effect, that it had a lien on Mr. Jones' television set, but contends that it may have had no lien on the property covered by the agreements with the 1371 other class members because a majority of the class members, in excess of 75 percent of them (a fact Goodyear alleges but does not seek to establish by affidavit or deposition), purchased either auto parts or service for their automobiles, or both.

Goodyear is correct that, under Louisiana law, the vendor's privilege is created only when movable property is sold. Although the Civil Code enumerates certain privileges with respect to the costs of particular services, there is no vendor's privilege if the seller provides a service such as an engine tune-up, an alignment, or a tow charge. Further, if the property sold was antifreeze, a spark plug, or some other item that became physically attached to, or incorporated in, the vehicle, no vendor's privilege exists because the item sold cannot be later identified. LSA–C.C. art. 3228.

But, while it is necessary for the plaintiff to prove the existence of a vendor's privilege for each class member, the plaintiff has established that Goodyear retained that security interest in the television set sold Mr. Jones, and did not inform him of it, although it did say it had some kind of undefined security interest. Goodyear says it disputes whether it retained a vendor's privilege on Mr. Jones' television set, but has not furnished any facts to support its conclusory allegations. If such facts exist, they may be supplied with a motion to reconsider.

Section 226.8(b)(5) of Regulation Z requires a "description" or "identification" of the security interest held by the creditor. A security interest is defined by Section 226.2(z) as "any interest in property which secures payment of an obligation," including a vendor's lien in personal property and "any lien on property arising by operation of law." A seller who retains a vendor's privilege must disclose to its credit customer that it has done so. *Starks v. Orleans*

*Motors, Inc.*, E.D.La.1974, 372 F.Supp. 928, 931, aff'd mem, 5 Cir. 1974, 500 F.2d 1182; *Pennino v. Morris Kirschman and Co.*, 5 Cir. 1976, 526 F.2d 367, 371.

In *Pennino, supra,* the form issued by Morris Kirschman and Company, which was held to be violative of the Act, provided that Morris Kirschman and Company was "hereby granted a security interest in the merchandise purchased . . . in accordance with existing state laws." Because the form did not expressly describe or identify the vendor's privilege, it violated the Truth in Lending requirements.

*Pennino,* unlike the present case, involved an open-end transaction governed by Section 226.7 of Regulation Z. However, in holding that the disclosure of Morris Kirschman and Company was inadequate with respect to the vendor's lien, the court cited with approval *Starks v. Orleans Motors, Inc., supra,* a case that did not involve an open-end credit sale. The disclosure requirement of Regulation Z with respect to transactions that are, and are not, on open-end credit are not phrased identically. But no reason exists to attribute a lower requirement of specificity with respect to the disclosure of security interests in one kind of sale as opposed to the other. *Pennino* is a compelling precedent in this case because, if anything, the wording of the disclosure held violative of Regulation Z in *Pennino* was more specific than Goodyear's disclosure to Wendell Jones and the members of the class he represents.

Goodyear says that, because Louisiana law creates more security interests than the laws of other states, creditors in Louisiana must bear a more onerous burden, and the court should relieve them. The solution to this problem, if it be one, lies in Goodyear's hands; Goodyear may simply renounce all implied security rights on its own form, or it may choose those it wants to retain and describe them. But the court may not rewrite either Louisiana law and ignore what it creates, or the federal regulation.

Ironically, Goodyear has also maintained that its undefined disclosure, though general on its face, is adequate because "in the

Wendell Jones' [sic] transaction, there was but one security interest which Goodyear could have obtained in the merchandise, namely the vendor's lien." Defendants' Supplemental Memorandum in Opposition to Summary Judgment, Oct. 25, 1977, 3. If this assertion is true, it is not readily apparent why a specific disclosure of the "but one security interest which Goodyear would have obtained" would have been more burdensome than Goodyear's undefined, inadequate disclosure. If, indeed, Louisiana law could create only one kind of privilege with respect to the transactions here in question, a reference to that law would have met the requirements of Section 226.8(b)(5). *See Anthony v. Community Loan & Investment Corp.*, 5th Cir. 1977, 559 F.2d 1363, in which a disclosure that the vendor "may exercise any rights and remedies granted a Secured Party by the Uniform Commercial Code," 559 F.2d at 1367, was held to be a sufficient disclosure in Georgia, a U.C.C. state in which security interests in personal property are covered entirely by a single section of the Code, Ga.Code Ann. § 109A–1–102.

Summary judgment on the inadequacy of Goodyear's disclosure with respect to its retained security interest will be rendered in favor of Wendell Jones.

As to this issue, with respect to the other class members, the defendants will prepare a list of members of the class, showing the name of each class member, the property or service sold, and whether or not the defendants genuinely contest the existence of a vendor's privilege. The plaintiffs will then review the list and notify the court whether they contest the determination. Summary judgment will then be rendered in favor of all class members as to whom the existence of an undisclosed vendor's privilege has been established. It will be denied as to all class members whose claims in this regard are concededly not established. The magistrate will hold an evidentiary hearing on disputed claims and make a report and recommendations.

The defendant is to furnish the list required by this portion of the court's order within 45 days unless the time is extended for cause shown. The class will provide its response within 30 days thereafter.

## IV.

## DID THE SIZE OF THE TYPE USED IN THE DISCLOSURE STATEMENT CONFORM TO THE TRUTH IN LENDING REQUIREMENTS?

■ Section 226.6(a) of Regulation Z provides, in part:

Except with respect to the requirements of § 226.10 [on advertising credit terms], where the terms "finance charge" and "annual percentage rate" are required to be used, they shall be printed more conspicuously than other terminology required by this part and all numerical amounts shall be stated in figures and shall be printed in not less than the equivalent of 10 point type, .075 inch computer type, or elite size typewritten numerals, or shall be legibly handwritten.

Each Goodyear invoice given to a member of the plaintiff class violates this provision in at least one respect.

The necessary violation occurs in lines 7 through 10 under the heading "Retail Installment Sale and Security Agreement." Those lines read, in part:

2. On each purchase, I will pay a finance charge which will not be in excess of $5 on purchases not exceeding $75 or $7.50 on purchases in excess of $75 when the liquidation period is less than 12 months or an amount determined by applying an annual percentage rate of _____% to the amount financed up to $_____ and _____% on the balance of the amount financed.

The plaintiff class has submitted an affidavit by a printer establishing that the size of the print in which this sentence appears, as well as that used in the remainder of the "Retail Installment Sale and Security Agreement," is "8 point century old style." Despite the opportunity extended by the court to furnish information on this subject, Goodyear has not done so.

Regulation 226.6(a) of Regulation Z requires that all numerical amounts "shall be printed in not less than the equivalent of 10 point type. . . ." The above sentence includes four numerical dollar amounts in 8 point type, obviously not the equivalent of 10 point type. This failure violates the Act.

It may be, although no party has raised the issue and the court has found no case on it, that this failure would not violate the Act in consumer sales for which the first portion of the sentence, including the printed numerical amounts, would not directly apply; that is, consumer credit sales in which the finance charge exceeds $5 on purchases not exceeding $75, or exceeds $7.50 on purchases exceeding $75. Even if this were so, and the regulation states no such exemption, the vendor would then be required, because of the amount of the finance charge, to disclose the finance charge "expressed as an annual percentage rate, using the term 'annual percentage rate' . . .," 12 C.F.R. § 226.8(b)(2). Such a disclosure would appear on the Goodyear form only in the second portion of sentence 2. In this portion, the words "finance charge" and "annual percentage rate" would thus be comprised in a required disclosure, or "required to be used" within the terms of Section 226.6(a) of Regulation Z. In such cases, those words are required to be "printed more conspicuously than other terminology required by [the regulation]." "Finance charge" and "annual percentage rate" in sentence 2 are not printed more conspicuously than other required disclosures printed in 8 point type on the Goodyear form. Thus, they too would be violations of the Act.

In short, even if the first portion of sentence 2 under the heading "Retail Installment Sale and Security Agreement" did not always violate the Act for lack of 10 point numerals, it would necessarily violate the Act as to all sales except those to which the second portion of the sentence would apply—sales in which the second portion of the sentence would necessarily incorporate two statutory violations. On this issue, summary judgment will be entered in favor of all members of the class who purchased in consumer transactions. One violation per form suffices.

The words "finance charge" appear five other times under the heading "Retail Installment Sale and Security Agreement." In three cases, the words are not part of required disclosures and, thus, not covered by Section 226.6(a).[2] In the other two instances, the disclosure might be required, depending on the sale.[3] However, because of the court's ruling on sentence 2, summary judgment will be denied with respect to the latter two instances. It is already certain that each form violates the type size regulation in at least one respect; it would be useless for the parties to expend the necessary effort to elucidate the facts concerning 1372 sales for the purpose of finding some additional type size violations.

### V.

### DID GOODYEAR FURNISH INFORMATION IN CONFUSING, OBSCURING, OR DETRACTING FASHION?

■ Section 226.6(c) of Regulation Z states:

At the creditor's option, additional information or explanations may be supplied

---

2. In line 4, under the heading "Retail Installment Sale and Security Agreement," the words "finance charge" are used as part of an explanation of the consequences for the purchaser of a subsequent purchase. Line 11 uses the words "finance charge" in disclosing that the finance charge begins to accrue on the date of sale. "Finance charge" is used in line 16, which explains that the customer must continue payments until the amount financed and finance charge are paid. In none of these instances are the words "finance charge" required by Regulation Z to be used.

3. Lines 12 and 14 use the words "finance charge" in discussing how the finance charge would be computed in the event of a subsequent purchase. Section 226.8(h)(1) requires a customer to agree to these terms if the credit sale involved is one of a series to which those terms apply. Thus, the words "finance charge" as used in these lines would be required or not, depending on the particular sale.

with any disclosure required by this part, but none shall be stated, utilized or placed so as to mislead or confuse the customer or contradict, obscure, or detract attention from the information required by this part to be disclosed.

In the form issued by Goodyear a quantity of additional information, not required by the Act, is squeezed together with pertinent information required by the Act (i. e., Rule 78's, security interest); the text uses long lines, single spaced, with printed words, numerals and percentages all in small type, so as to have the effect of misleading or confusing the customer, or obscuring or detracting attention from the information required by the Act to be disclosed.

In fact, it is practically impossible to read the form from beginning to end without getting lost. It was the intent of Congress in passing the Truth in 'Lending Act to educate and inform the consumer of the costs and incidences of credit. Congress required that certain information be presented to the consumer in conspicuous print, clearly and meaningfully. Goodyear's form destroys the informational and educational aspects that it is supposed to promote. Therefore, the form violates Section 226.6(c) of Regulation Z.

## VI.

### HOW ARE DAMAGES TO BE COMPUTED AS TO THOSE CLASS MEMBERS WHO PREVAIL?

It is likely from the discussion that judgment will eventually be rendered in favor of some, but not all, class members. The plaintiff has sought a summary judgment determination of the method of computing damages. Here again, the defendant has not responded directly despite ample opportunity to do so. But the issue appears ripe for resolution.

Damages in a Truth in Lending class action are to be:

. . . [S]uch amount as the court may allow, except that as to each member of the class no minimum recovery shall be applicable, and the total recovery in such action shall not be more than the lesser of $500,000 or 1% of the net worth of the creditor . . . . .

\* \* \* \* \* \*

In determining the amount of the award in any class action, the Court shall consider, among other relevant factors, the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional.

15 U.S.C.A. § 1640(a).

The statutory damages were increased by Congressional act, P.L. 94–240, 90 Stat. 257, from $100,000 to $500,000. This act was designed to remedy potential problems of class actions as raised in a number of cases. P.L. 94–240 went into effect on March 23, 1977, while this action was pending before the court, and will be applied here. *See Bradley v. School Board of Richmond*, 1974, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476.

The factors to be considered include "the resources of the creditor." Neither party has furnished detailed evidence in this respect, but it is well known that Goodyear is a national company, listed on the New York Stock Exchange. According to Goodyear's 1975 Annual Report, a copy of which has been supplied by plaintiffs and not challenged by defendants, its total income for 1975 was $161,600,000.

Another factor is the "number of persons adversely affected." According to Goodyear's own estimates during these proceedings, approximately 3000 people have received the challenged disclosure form each year at one Goodyear Service Store, located at 4200 Chef Menteur Highway, where Mr. Jones bought his television set. Most of the violations alleged are inherent in the printed form used by Goodyear, which was prepared by employees of Goodyear in Akron, Ohio in March 1973.

This form was in use at the Chef Menteur Service Store from March 1973 until June

1976, a period of approximately 2⅓ years. If the form was issued to 3000 people yearly, then approximately 10,000 consumers at the Chef Menteur store alone received this offensive form. Considering the number of Goodyear stores in the state, many more thousands of consumers were likely issued this form. Thus, a very large number of persons were adversely affected. But, even if we limit the number affected to the class in making this determination, the class size itself is 1372 members.

Other factors to consider are the "frequency and persistence of failures of compliance" and "the extent to which the creditor's failure of compliance was intentional." Goodyear has persistently failed to comply with the Act even after numerous lawsuits have been filed against them in this Eastern District alone. This failure to comply appears to be intentional. See *Ortiz v. Goodyear Tire and Rubber Co.*, C.A. 73–2829, E.D.La., Section F; *Williams v. Goodyear Tire and Rubber Co.*, C.A. 75–1408, E.D.La., Section C; and, *Bagneris v. Goodyear Tire and Rubber Co.*, C.A. 75–1555, E.D.La., Section B. All of those cases were settled favorably for plaintiffs.

Goodyear has militantly resisted orderly voluntary discovery. It has failed on several occasions promptly to comply with discovery orders. It was not until June 9, 1976, two years after the decision in *Starks*, that Goodyear changed its form.

Considering these factors, each plaintiff who prevails will be allowed double the amount of the finance charge to him, provided that the total damages shall not exceed $500,000. If the defendant's net worth is less than $50,000,000, then, upon application and the necessary proof, the maximum amount will be reduced to one percent of its corporate net worth. If the parties cannot agree on counsel's fees for plaintiffs' counsel within 90 days, the magistrate will hold an evidentiary hearing and render a report and recommendations.