GUIDRY, Judge.
The plaintiff, Myron Ducote, brought this suit under La.R.S. 23:1361 against his employer, J.A. Jones Construction Company, and its insurer, Aetna Life and Casualty Insurance Company, claiming that he was fired because he filed a workmen’s compensation claim. The trial court rendered judgment in favor of the plaintiff and awarded him $24,585.60 (wages for one year) and $2,500.00 attorney’s fees as well as expert witness fees of $150.00. Defendants appeal the judgment urging error was committed by the trial court in finding that Ducote’s employment was terminated for filing a workmen’s compensation claim and for taxing expert witness fees of $150.00 against defendant.
FACTS
On March 30, 1983, Myron Ducote was working as a carpenter for J.A. Jones Construction Company at the Lock and Dam Project on the Red River in Catahoula Parish. At approximately 9:00 a.m. that morning, Ducote, while lifting oak boards, experienced a sudden sharp pain in the lower portion of his stomach. Ducote informed his foreman, Terrell Laehney, that he was not feeling good and wished to go home. According to Ducote, he indicated to Lach-ney that something was wrong with his stomach. Ducote was given permission to go home.
At approximately 8:30 p.m. that same evening, Ducote telephoned Laehney and stated that he was going to the doctor the next day. Ducote informed Laehney that he was injured on the job, at which time Laehney indicated that Ducote should speak to Walter McDaniel, the project safety supervisor.
According to Ducote’s testimony, he spoke to McDaniel the following day and was told that the accident would be investigated. Ducote inquired into whether or not his medical bills would be taken care of by the company and apparently got no reply. Ducote testified further that on the next day, he again met with McDaniel and was informed that if the medical bills were turned over to the insurance company, Du-cote’s employment would be terminated.
McDaniel testified that Ducote did contact him, although he could not recall the exact date. According to McDaniel, Du-cote stated that he had sustained an injury while lifting boards at work. McDaniel asked Ducote if he had reported the injury to his foreman to which Ducote answered “no” stating that he was ashamed to report it. McDaniel noted that Ducote was fired for his failure to report his on-the-job injury after its occurrence, in accordance with established safety regulations. The termi *193 nation notice given Ducote indicated failure to follow safety regulations, i.e., failure to immediately report a job injury, as the reason for discharge.
Ducote’s employment was terminated on April 8, 1983. His injury was diagnosed as a hernia and he received workmen’s compensation benefits until June 7, 1983, at which time he was released from the care of his physician. Ducote filed suit against J.A. Jones Construction Company on May 18, 1983.
UNLAWFUL DISCRIMINATION
Defendants contend the trial court erred in finding that plaintiff was discharged for filing a workmen’s compensation claim. Plaintiff brought this suit under La.R.S. 23:1361, which provides in pertinent part:

B. No person shall discharge an employee from employment because of said employee having asserted a claim for benefits under the provisions of this Chapter or under the law of any state or of the United States. Nothing in this Chapter shall prohibit an employer from discharging an employee who because of injury can no longer perform the duties of his employment.
C. Any person who has been denied employment or discharged from employment in violation of the provisions of this Section shall be entitled to recover from the employer or prospective employer who has violated the provisions of this Section a civil penalty which shall be the equivalent of the amount the employee would have earned but for the discrimination based upon the starting salary of the position sought or the earnings of the employee at the time of the discharge, as the case may be, but not more than one year’s earnings, together with a reasonable attorney’s fee.”
In Wiley v. Missouri Pacific R. Co., 430 So.2d 1016 (La.App. 3rd Cir.1982), writ denied, 431 So.2d 1055 (La.1983), this court, in addressing the applicability of La.R.S. 23:1361 to claims brought under the F.E. L.A., stated:
“The principal purpose of R.S. 23:1361 is remedial, rather than penal. Remedial and penal statutes are distinguishable in terms of the nature of the evil sought to be remedied by the legislation; it is penal if it undertakes to redress to the public and remedial if it undertakes to remedy a wrong to the individual. 3 Sutherland, Statutory Construction, § 60.03, at 33 (4th ed. Sands, 1974); State v. Boniface, 369 So.2d 115 (La.1979). R.S. 23:1361 was designed to protect individuals from discrimination by virtue of their assertion of legal right.
Inasmuch as R.S. 23:1361 is a remedial statute, it is to be liberally construed to suppress the evil and to advance the remedy. Starks v. Orleans Motors, Inc., 372 F.Supp. 928 (E.D.La.1974). What is a liberal construction is ordinarily one which makes the statutory rule or principle apply in more situations than would be the case under a strict construction. State v. Boniface, supra. In the present case the evil to be deterred is unjust dismissals. The employee must be .able to exercise his right in an unfettered fashion without being subjected to reprisal. The remedy is intended to place the discriminated-against employee in the same position he would have been but for the employer’s retaliatory conduct, thereby affording the worker an opportunity to organize his affairs and enter the work force anew....”
The trial judge, in his written reasons for judgment, noted:
“It is the finding of this court that the plaintiff was deliberately fired by defendant because he filed a workmen’s compensation claim. This court will not permit a company’s policy to fire a worker for filing a workmen’s compensation claim under the guise of terminating him because he failed to report an injury timely. It should be noted that plaintiff did in fact report the injury immediately on the job and later that night from his home by telephone.” _
*194 The record does not support the trial judge’s finding of fact that the plaintiff reported his injury immediately on the job site. Ducote told his foreman that he was not feeling good and had pain in his stomach. It was not until later that evening that Ducote informed his foreman he had injured himself on the job.
At trial, Ducote acknowledged that when he began working for J.A. Jones Construction he was instructed to report any injury sustained on the job immediately to the foreman. This requirement was reiterated to employees every Monday morning at the safety meetings. Plaintiff’s own testimony makes clear that he was immediately aware that the onset of pain which he experienced in his stomach was caused by an on-the-job injury. In this connection, he testified as follows:
“Q. But there was no doubt in your mind when you lifted that board, that lifting the board had something to do with the pain, the sudden pain that you experienced in your groin?
A. Yes sir.
Q. You didn’t have that pain before you lifted that board, did you?
.A. No sir.
Q. So you knew there was some connection between the lifting of the board and the pain in your stomach?
A. Right.
Q. It came on right when you lifted the board?
A. Right.”
It is evident from Ducote’s own testimony that J.A. Jones Construction Company was adamant about employees’ reporting on-the-job injuries promptly as part of an overall effort toward a safe working environment. Prompt reporting of injuries was seen as a means of lowering the chances of further injuries by calling attention to potentially dangerous conditions.
J.A. Jones Construction Company introduced evidence that at least two other employees were fired for failing to promptly report an injury taking place on the job.
Ducote failed to introduce any evidence that Jones Construction did not strictly and uniformly enforce their rule that failure to follow standard safety procedures would result in termination of employment.
Concerning Ducote’s testimony that McDaniel stated that if a workmen’s compensation claim were filed Ducote would be fired, it would not appear that this statement necessarily evinces an intention on the part of Jones Construction to violate the provisions of La.R.S. 23:1361. As noted above, there was no evidence presented to indicate that Jones Construction did not strictly and uniformly apply their safety rules. Consequently, Mr. McDaniel’s statement can be taken as merely an affirmation of the result which was certain to follow under, that strict policy, since most injuries on the job will give rise to a workmen’s compensation claim and by Mr. Du-cote seeking such compensation, he admitted suffering an injury on the job which was not reported promptly.
Referring back to the trial judge’s reasons for judgment, the judge states that a company will not be permitted to fire a worker for filing a workmen’s compensation claim under the guise of terminating him because he failed to report an injury timely. As correctly stated by appellant in brief, the company’s strict safety policies and their enforcement thereof are not matters for the trial court to be reviewing. The court was only called upon to decide the limited question of whether La.R.S. 23:1361 was violated. It is quite clear, from the evidence presented at trial, that Jones Construction is very safety conscious. Ducote testified that he was told on many occasions to report injuries immediately and that failure to do so would result in dismissal, yet the evidence supports the conclusion that Ducote failed to report the job-related injury promptly. Albeit, one might conclude that the termination of plaintiff’s employment under the circumstances of the instant case was harsh, it does not necessarily follow that plaintiff’s termination from employment was in violation of La.R.S. 23:1361.
*195 Although our court in Wiley, supra, indicated that La.R.S. 23:1361 was to be given a liberal construction, in this case we conclude that the trial judge was clearly wrong in finding that Mr. Ducote carried his burden of proving by a preponderance of the evidence that he was fired because he filed a workmen’s compensation claim.
EXPERT WITNESS FEE
The judgment of the trial court includes an award of $150.00 as an expert witness fee for Dr. Richard Michel. Defendant contends the trial court erred in granting this award. Dr. Michel was the plaintiffs treating physician; he was not deposed nor did he testify at trial.
Expert witnesses are entitled only to reasonable compensation for their appearance in court and for preparatory work done, and the fees allowed should be commensurate with those allowed in similar cases. Town of Krotz Springs v. Weinstein, 401 So.2d 664 (La.App. 3rd Cir.1981).
As noted above, Dr. Michel did not testify at trial nor was he deposed. Therefore, it appears the trial court was in error in awarding $150.00 in expert witness fees for the services of Dr. Michel.
For these reasons, the judgment of the trial court is reversed and set aside and it is now ordered, adjudged and decreed that there be judgment in favor of defendants, J.A. Jones Construction Company and Aet-na Life and Casualty Insurance Company, and against plaintiff, Myron Ducote, dismissing plaintiffs suit with prejudice. All costs of these proceedings at the trial level and on appeal are assessed to plaintiff, Myron Ducote.
REVERSED AND RENDERED.
STOKER, J., concurs and assigns written reasons.