Thomas L. EOVALDI, etc., Plaintiff-Appellee and Cross-Appellant,

v.

The FIRST NATIONAL BANK OF CHICAGO, Defendant-Appellant and Cross-Appellee.

Nos. 76–1263, 76–1264.

United States Court of Appeals, Seventh Circuit.

Argued June 7, 1976.

Decided Feb. 2, 1979.

Reconsideration Denied April 27, 1979.

Alan I. Becker, Kirkland & Ellis, Chicago, Ill., for defendant-appellant and cross-appellee.

Aram A. Hartunian, Chicago, Ill., for plaintiff-appellee and cross-appellant.

Before FAIRCHILD, Chief Judge, SWYGERT and WOOD, Circuit Judges.

FAIRCHILD, Chief Judge.

Defendant Bank has appealed from a judgment against it for $127,899 and attorney's fees. The principal amount is to be distributed in equal shares among a class of BankAmeriCard cardholders. The judgment was entered on plaintiff's amended Count II on the theory that when the Bank, having agreed to provide monthly statements, omitted a separate statement for one month as an incident of a shift in the beginning dates of its monthly billing period, the Truth in Lending Act and Regulation Z thereunder required the Bank to give notice of the change thirty days before its March, 1971 billing dates, and that the notices given were not timely. The court had earlier denied plaintiff summary judgment on Count I and original Count II, which presented other theories. Plaintiff cross-appealed.

Many facts are undisputed. The Bank operates a BankAmeriCard program which is an "open end consumer credit plan" under the Act and Regulation Z. A credit card issued under this plan may be used for the purchase of goods and/or for borrowing money ("cash advances"), for which services the Bank imposes finance charges. Typically, when a cardholder borrows money, he incurs a finance charge from the date the indebtedness is contracted. For purchases of goods and services, however, the card-

holder incurs no finance charge until approximately twenty-five days after the billing date shown on the statement which first bills the purchase.

The Truth in Lending Act requires that creditors such as the Bank send to cardholders a billing statement "for each billing cycle at the end of which there is an outstanding balance in that account or with respect to which a finance charge is imposed." 15 U.S.C. § 1637(b). Billing statements must set forth, among other items, the indebtedness outstanding at the beginning and end of the statement period, and all charges and credits to the account (including finance charges) during that period.

Prior to April, 1971, defendant's BankAmeriCard cardholders were divided into five groups for billing purposes, each with a billing cycle beginning on a different day of the month. At the end of each cycle billing statements were prepared and mailed to cardholders. As the number of cardholders grew, however, defendant concluded that its five-cycle system would not adequately manage the increasing burden. In spring of 1971, the Bank responded to these anticipated difficulties, and changed to a ten-cycle system.

The conversion to a ten-cycle system necessarily changed the billing dates for most cardholders. To facilitate the computer changes and to prevent some cardholders from receiving two billing statements within a short interval, all billing cycles commencing in March were extended into May. As a consequence, cardholders did not receive billing statements in April, but received their initial billing statements under the new ten-cycle system.

During the March to May period, the Bank modified its billing procedure in accordance with the conversion. Purchases reported to the Bank after the March billing date were not posted until the May billing date. Thus as to some purchases, cardholders received extensions of time to May without cost. In addition, the Bank

did not immediately impose finance charges on cash advances during the conversion period. Finance charges did accrue, however, on the balance billed on the March statement, and remaining unpaid, unless paid in full.

Cardholders were advised of the Bank's billing conversion by notices which were mailed together with February and March billing statements. Cardholders were informed of the system changes described above. Their March statements contained the billing information for the old cycles, ending in March, and stated the date in April when full payment must be made to escape an additional finance charge.

Plaintiff Eovaldi is a cardholder to whom credit had been extended under defendant's BankAmeriCard system. In July of 1971, he brought this action on behalf of himself and a class of 90,000 cardholders under the Bank's system. Plaintiff's complaint sought to recover both actual damages and statutory penalties because of three claimed violations of the Act and Regulation Z:

(1) Count I alleged that the notice of the intended omission of the April statement, sent out with the March statement, was not clear and conspicuous.

(2) Count II alleged that the omission of the April statement was a violation of 15 U.S.C. § 1637(b) requiring a statement at the end of a billing cycle, and of § 226.6(b), Regulation Z, requiring periodic statements.

(3) At the direction of the district court, plaintiff amended Count II to claim that because the Bank had previously disclosed that monthly statements would be furnished, § 226.7(e), Regulation Z, required the Bank to give notice of its intention to omit the April billing statement at least thirty days prior to the beginning of the cycles which ended in April. The district court granted judgment on Count II as amended.

Plaintiff claimed, in substance, that each violation impaired his opportunity to make

a payment during the latter part of April, and thus resulted in a greater finance charge than would have accrued had he made a payment. He does not claim that he could not have made a payment with the desired effect, but that his opportunity was impaired by the lack of information the statement would have provided.

The substance of plaintiff's claim of injury can be illustrated by the facts of his account. The Bank sent him a billing statement dated March 8, 1971, showing a new balance of $303.14, a minimum payment due of $15.16, and that the new balance must be paid by April 2 to avoid additional finance charge. This statement was accompanied by the notice referred to in Count I, concerning the changes in the billing system, and stating in part "You will receive no April statement from BankAmeriCard" and indicating that his next statement would be mailed May 12th.

Plaintiff's billing cycle began March 9 and would, but for the change, have ended April 8. By reason of the change, the cycle ended May 11, just before the new billing date assigned to plaintiff. Plaintiff made no payment before April 2, but paid $50.00 April 12. His billing statement issued May 12 showed a finance charge of $8.94. Four dollars and fifty-five cents ($4.55) of that amount accrued on the $303.14 owing from March 9 through April 8. The remaining $4.39 accrued on the $303.14 owing from April 9 to April 12 and the $253.14 owing from April 12 through May 12.

Plaintiff's claim is that by reason of lack of timely and proper notice or otherwise he was entitled to a statement dated April 8 informing him of his new balance of that date and of a date by which (presumably May 3) he would have been able to avoid the $4.39 by payment in full. He does not claim that he would have done so, and his practice was to make only partial payments, but he claims he was entitled to the information and the opportunity. He appears also to claim that if he had received an April statement, he would at least have made another partial payment, thus reducing the $4.39.

Part of the Bank's conversion plan included not adding purchases reported after the date of the March statement until the May billing date although in the absence of the change, purchases reported after the March billing date and before the April billing date would have been added to the account on the latter date. Thus the change delayed the accrual of finance charges on such purchases. Plaintiff received a benefit from this delay. He made a purchase of $16.77, posted March 18. It was not added to his account until May 12, and did not generate a finance charge before then. Although this and similar features reduced finance charges for the entire system in an amount estimated at $97,500, plaintiff dismisses them as irrelevant generosity on the part of the Bank.

The plaintiff class was defined as cardholders who owed balances as of the date of their March statements, did not pay the balances in full within twenty-five days, and did not, prior to receiving their May statements, pay the finance charges incurred from the date they ordinarily would have been billed in April until the date of their May statements.

The district court considered it almost impossible to ascertain the actual damages sustained by each member of the class, and decided that no method of calculation proposed by plaintiff was adequate.

Plaintiff had sought $181,216, computed as the amount of all finance charges incurred by the entire class for the period from the date they would ordinarily have been billed in April until the date they were billed in May. This gave the Bank no credit for the finance charge which would have accrued, but for the change, and did not. Moreover, the Bank produced computations of an expert to show that the premise for the demand was erroneous. The expert studied the payment practices of a representative group in representative earlier months. He reached the conclusions,

among others, that (a) "the best estimate of the total amount of finance charges that the entire group would have avoided had billing statements been mailed in April, 1971, is $22,567"; and (b) "Odds are 99 to 1 [2.33 standard deviations] that the true amount will not be larger than $27,898."

The court selected the latter amount as "actual damage" under 15 U.S.C. § 1640 and added a discretionary $100,000 under § 1640(a)(2)(B), and directed that the entire amount be distributed to the class in equal shares. Understandably the Bank challenges the determination on this basis of actual damage to members of a class whose individual losses have been demonstrated to be unequal.

## I. THE DISTRICT COURT'S THEORY OF LIABILITY

The district court concluded that notice of the omission of a separate April billing statement was required, but not timely given. Hence damages arising from the omission were awarded. In order to reach that conclusion, the court considered that the Bank had previously disclosed to its customers that it would provide a monthly statement; that Regulation Z required advance notice of the omission of a separate April statement as a change in terms previously disclosed; that the applicable form of the Regulation was its form prior to an amendment effective April 5, 1971; and that under a proper interpretation of the Regulation, the change became effective "within" the billing cycle which began in March, so that notice in March, thirty days before the omission was not timely, notice thirty days before the beginning of the March cycle was required, and the notice mailed with the February statement was not timely because it was mailed only twenty-eight days before the March cycle.

Nothing in the Act or Regulation Z prescribes the length of a billing cycle or frequency of a billing statement in an open end consumer credit plan. At least in the first instance, the lender makes the choice.

Nothing, however, expressly required disclosure of the chosen length or frequency, or of the date on which a billing cycle is to begin or statement is to be mailed. 15 U.S.C. § 1637(b) does require a statement for each billing cycle at the end of which there is a balance in the account or with respect to which a finance charge is imposed. The parallel provision of Regulation Z is § 226.7(b), which carries the catch-line "Periodic statements required." The word "cycle" suggests periodic repetition, and "Billing cycle" is presently defined in § 226.2(g) of Regulation Z as the "time interval between regular periodic billing statement dates." It seems clearly contemplated that cycles are to be approximately uniform in duration and beginning dates, although we find nothing to prohibit a permanent change in them after the initial choice, nor a temporary change in them incidental to an adjustment from one set to a different set.

Section 226.7(e) of Regulation Z requires an advance written disclosure (or notice) of a change in terms previously disclosed to the customer. One of the issues argued was whether the terms referred to are only those terms disclosure of which was expressly required by the Act and Regulation. Judge McMillen did not consider the reference so limited, and found that the Bank had earlier disclosed to its cardholders that statements would be furnished monthly. He reasoned that the omission of a separate April statement and resulting coverage of a longer period by the May statement was a change in a term previously disclosed.

The Board of Governors of the Federal Reserve System has indicated, informally, that advance notice of a change in the length or beginning date of billing cycles would be appropriate. Without disclosing an analysis of where the requirement of notice is to be found, the Board has indicated that an adjustment in billing cycle dates (really what happened here), can properly be made with advance notice. See F.R.B. Advisory Letter No. 164, October 17,

1969, CCH Cons.Cr. Guide ¶ 30,191; No. 529, October 18, 1971, CCH Cons.Cr. Guide ¶ 30,-741. Treating with a permanent change in length of a billing cycle (which did not happen here), the Board has indicated that the disclosure provision of § 226.7(e) would apply.

■ We conclude that a change in length or beginning date of a billing cycle, even when, as here, incidental to an adjustment of beginning dates, is a change in terms covered by the disclosure requirement of § 226.7(e) of Regulation Z. We do not rely particularly on the fact that the Bank had made an express disclosure with respect to monthly statements. Rather, it seems that the Act and Regulation so clearly contemplate regularity of cycles and statements, and that the creditor must in practice if not otherwise have disclosed the length and beginning dates of such cycles, and the dates of such statements, that a change of any substance in them should be considered a change in terms previously disclosed. This interpretation is consistent with the views informally expressed by the Board.

Before April 5, 1971, the disclosure requirement of § 226.7(e) (now (f)) read:
"If any change is to be made in terms of an open end credit account-plan previously disclosed to the customer, the creditor shall mail or deliver to the customer written disclosure of such proposed change not less than 30 days prior to the effective date of such change or 30 days prior to the beginning of the billing cycle within which such change will become effective, whichever is the earlier date."

■ In this case there was no permanent change in the length of the billing cycle. The permanent change was the days of the month on which most billing cycles began. In order to make the adjustment, each billing cycle which began in March was extended to some date in May. The district court considered the effective date of the change to have been the date when an April statement would ordinarily have been mailed. (April 9 as to plaintiff.) We

agree. The omission of the separate April statement occasioned the earliest impact upon any cardholder. Turning to § 226.7(e) of Regulation Z in its pre-amendment form, already quoted, the disclosure mailed with the March billing statement (March 8 as to plaintiff) fulfilled the branch of the regulation requiring mailing not less than thirty days prior to the effective date of the change. The other branch of the regulation required also that the mailing occur not less than thirty days prior to the beginning of the billing cycle within which such change will become effective. The anticipated April statement date (April 9 for plaintiff) was the first day of the billing cycle which would have begun but for the change. The March disclosure was mailed thirty days before the beginning of that anticipated cycle. The view of the district court was that as a result of the change there was a billing cycle which began in March (March 9 for plaintiff) and ended in May, and the omission of the separate April statement occurred within that cycle. Consistently with that view, the court decided that the regulation required mailing at least thirty days before the beginning of the March cycle (March 9 for plaintiff). Although a disclosure had been mailed with the February statements, the mailing was not a full thirty days prior. We think it a more reasonable view, for the purpose of the Regulation, to focus on the anticipated billing cycle than on the billing cycle which resulted after giving effect to the change. Focussing on the latter results in a requirement of a sixty-day notice, when a notice accompanying the previous billing seems much more likely to accomplish the purposes of the Regulation, informing those cardholders who might have the type of interest in the omission of the April statement which plaintiff depicts and claims. Plaintiff himself has pointed out that the group receiving the second previous billing statement is not identical with the group receiving the immediately previous statement. It is the latter group who would have the unpaid balances on which finance charges would accrue if the balance were

not paid in full and which would be reduced if partial payments were made.

We note below the amendment which became effective April 5, 1971. In issuing the amendment several months earlier, the Board explained that a purpose of the amendment was to "allow notification with the next previous billing statement." 35 Fed.Reg. 17062 (Nov. 5, 1970). Because there is nothing to require focussing on the billing cycle which resulted from the change, we adopt, in these circumstances, the view of the Regulation which accomplishes the more reasonable result.

In our opinion § 226.7(e) in its pre-amendment form required the mailing at least thirty days before the anticipated April statement date, and the mailing with the March billing was timely.

■ We note, also, our conclusion, differing from that of the district court, that the amended § 226.7(e) applied to the omission of the April billing statement for plaintiff and for any other cardholder whose April statement would ordinarily have been mailed on or after April 5.

Section 226.7(e) (now (f)) read, after the amendment, in pertinent part:

> "Not later than 15 days prior to the beginning date of the billing cycle in which any change is to be made . . . the creditor shall mail or deliver written disclosure of such change to each customer required to be furnished [a billing statement] . . . ."

## II. THE THEORY OF PLAINTIFF'S ORIGINAL COUNT II

■ Plaintiff urges, apparently separately from any question of timely or adequate notice, that the Bank's omission of the April billing statement was a violation of the Act and Regulation. The provisions relied on have already been cited: 15 U.S.C. § 1637(b) requiring a statement for each billing cycle, and its counterpart in Regulation Z, 12 C.F.R. § 226.

Plaintiff argues that there was in fact a billing cycle, March to April, for which no statement was provided. In substance, plaintiff seems to argue that a lender such as the Bank cannot lawfully extend a billing cycle to any substantial extent as an incident of adjusting billing cycles to new beginning dates. As we have already noted in Part I, we can find no part of the Act or Regulation which prohibits doing so, and are unable to understand why a prohibition should be implied.

## III. THE THEORY OF COUNT I

■ Plaintiff contends that the notice mailed with the March statement was inadequate even if timely. 15 U.S.C. § 1631 provides that required information shall be disclosed "clearly and conspicuously." Section 226.6(a) of Regulation Z adds that disclosures shall be made "in meaningful sequence." Section 226.6(c) provides that where additional information or explanations are supplied with a required disclosure, "none shall be stated, utilized, or placed so as to mislead or confuse the customer or lessee or contradict, obscure, or detract attention from the information required . . . to be disclosed."

The text of the notice which accompanied the March statement is as follows:

## IMPORTANT NOTICE FROM BANKAMERICARD

**YOU WILL RECEIVE NO APRIL STATEMENT FROM BANKAMERICARD.**

IN AN EFFORT TO IMPROVE OUR SERVICE TO OUR CARDHOLDERS, WE ARE CHANGING OUR BILLING SYSTEM DURING THE MONTH OF APRIL. THIS, COMBINED WITH OTHER CHANGES TO BE MADE IN JULY, SHOULD DECREASE THE TIME IT TAKES FOR US TO SEND THE BILLING STATEMENTS TO YOU.

TO THANK YOU FOR YOUR PATIENCE, MERCHANDISE PURCHASES AND CASH ADVANCES DURING THIS "NO BILLING PERIOD" WILL BE FREE OF FINANCE CHARGES UNTIL BILLED IN MAY. ALSO, MOST CUSTOMERS WILL RECEIVE MORE THAN THE NORMAL 25–DAY PERIOD IN WHICH TO PAY.

YOUR NEXT STATEMENT WILL BE MAILED DURING MAY ACCORDING TO THE SCHEDULE SHOWN AND YOU WILL RECEIVE IT DURING MAY OR JUNE. IF YOU WISH TO MAKE *MORE THAN ONE PAYMENT* BEFORE YOUR NEXT BILLING DATE IN MAY, YOU *MUST* RETURN THIS CARD WITH YOUR PAYMENT. LIST YOUR ACCOUNT NUMBER ON YOUR CHECK.

DURING THIS "NO BILLING PERIOD", FINANCE CHARGES WILL CONTINUE TO ACCRUE ON THE "FINANCE CHARGE BALANCE" APPEARING ON THE ENCLOSED MARCH STATEMENT.

(OVER)

*The sixth digit from the left (above arrow) in your account number above indicates your permanent billing date which can be determined by finding the same number below and reading date opposite.*

| NO. ABOVE ARROW | YOUR NEW BILLING DATE |
|---|---|
| *0* | *1st of the month* |
| *1* | *3rd of the month* |
| *2* | *6th of the month* |
| *3* | *9th of the month* |
| *4* | *12th of the month* |
| *5* | *15th of the month* |
| *6* | *18th of the month* |
| *7* | *21st of the month* |
| *8* | *24th of the month* |
| *9* | *27th of the month* |

---

It was on a card 3½ by 7⅝ inches, separate from the card of the same size which constituted the billing statement. There was a key in the margin from which the recipient could readily learn the date of his May billing statement. The notice was placed in the envelope so that it faced the same way as the billing statement.

Plaintiff retained the notice with his billing statement although he had no recollection of having seen it, and was surprised when he inquired about the size of his finance charge in May, and learned he had not received an April statement.

There was advertising material on the reverse side of the notice, reading as follows:

### KINNEY SHOE CORPORATION

DEAR FRIENDS:

HERE IS YOUR CHANCE TO SAVE $1.00!

KINNEY AND BANKAMERICARD, TWO GREAT NAMES IN CHICAGOLAND HAVE JOINED TOGETHER TO SAVE YOU MONEY.....AND THAT'S ALWAYS A GOOD IDEA. JUST WALK INTO ANY OF THE 44 KINNEY SHOE STORES IN CHICAGOLAND AND CHARGE $14.99 OR MORE ON YOUR BANKAMERICARD AND YOU WILL GET $1.00 OFF.

THIS OFFER WILL BE IN EFFECT FROM MARCH 18 THROUGH APRIL 17, 1971.

THERE IS NO LIMIT ON THIS OFFER.....ON EVERY $14.99 PURCHASE CHARGED ON BANKAMERICARD AT KINNEY SHOE STORES YOU WILL RECEIVE $1.00 OFF.

*(See important notice on reverse)*

---

Plaintiff claims that he is entitled to summary judgment that the notice was not a clear and conspicuous disclosure, and was misleading and confusing, internally as well as by being associated with the advertisement. At least, plaintiff asserts, there is a question of fact.

Our own examination of the notice and the reverse side satisfies us that as a matter

of law, the notice adequately complied with the Act and Regulation.

We need not reach other arguments of the Bank with respect to the determinations of damages, discretionary allowance, and management of the class action.

The judgment for plaintiff, appealed from, is reversed and the cause is remanded, with directions to dismiss the action.