Luella **WRIGHT** and Charlie Wright, Plaintiffs-Appellees-Cross Appellants,

Willie Shavers, Plaintiff-Appellee,

v.

**TOWER LOAN OF MISSISSIPPI, INC.,** d/b/a Tower Loan of Canton, Defendant-Appellant-Cross Appellee.

No. 81–4154
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

June 28, 1982.

Kenneth G. Stamps, Jackson, Miss., for defendant-appellant cross appellee.

Charles H. Ramberg, Jackson, Miss., for plaintiffs-appellees-cross appellants.

Before RUBIN, SAM D. JOHNSON and GARWOOD, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The purpose of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601–1667e (1976 & Supp. IV 1980),[1] is "to assure a meaningful disclosure of credit terms." *Id.* § 1601(a). This purpose would appear to be best served by a succinct and lucid statement that would at once facilitate both the borrower's understanding and the lender's compliance. However, although TILA has now been in force for over thirteen years, the court decisions, regulations, amended regulations, official staff interpretations, unofficial staff interpretations, and the Act itself still do not resolve all compliance problems. This difficulty arises in part because of the infinite variety of lending transactions, and the efforts of lenders to devise a simple form adequate for all of

---

1. TILA has been amended by the Truth in Lending Simplification Act ("TILSA"), which is Title VI of the Depository Institutions Deregulation and Monetary Control Act of 1980, Pub. L.No.96–221, 94 Stat. 132 (*codified in scattered sections of 15 U.S.C.*) [hereinafter cited as "TILSA § ____"], *as amended by* Cash Discount Act, Pub.L.No.97–25, 95 Stat. 144 (1981). The TILSA amendments were effective April 1, 1980, although compliance with them is optional until October 1, 1982. TILSA § 625, 15 U.S.C. § 1602 note (Supp. IV 1980), *as amended by* International Banking Facility Deposit Insurance Act, Pub.L.No.97–110, § 301, 95 Stat. 1513 (1981). Unless otherwise noted, in this opinion references to TILA will be to the pre-TILSA version.

them.[2] Although Congress has tried to resolve these problems by enacting TILSA, *supra* note 1, its provisions, not being retroactive, do not resolve the problems still arising from loans made before its effective dates, *see id.*

These cases involve the adequacy of credit insurance disclosures and the effect of erroneously putting superfluous charges on disclosure statements. Taking into consideration the rule that the burden of compliance is on the lender, we affirm the magistrate's judgment holding the lender liable to three borrowers for failing to furnish them proper disclosure, although our reasons differ from the magistrate's.

## I

This appeal involves two separate suits filed by different borrowers against the same lender, Tower Loan of Mississippi, Inc. ("Tower"), and consolidated for trial before a magistrate.[3] On June 6, 1978, the first borrowers, Luella and Charlie Wright, entered into a loan transaction with Tower by which they obligated themselves to pay a total of $550 in installments. The loan was scheduled to be for twenty-five months, and would, therefore, have been paid in full on July 6, 1980. Tower then granted, and charged the Wrights for, a first-payment extension that made the final loan payment due on July 21, 1980, several days beyond twenty-five months from the date on which the Wrights entered into their loan transaction with Tower. The disclosure statement, however, erroneously said that the last payment was due on August 21, 1980.

Tower gave the Wrights an undated disclosure statement. On it, Mrs. Wright signed an election or authorization to buy credit life, health, and accident insurance and credit property insurance. The life, health, and accident insurance was provided in one policy, the property insurance in another. Each policy was issued by a different company. Their disclosure statement recited that the terms of coverage of their insurance policies were stated in the policies. Each policy stated that the term of coverage was twenty-five months, beginning June 6, 1978, and ending July 6, 1980. Thus, according to the information on the policies, each policy expired one month and fifteen days before the disclosure statement recited, erroneously, that the last loan payment was due, and fifteen days before it actually was due, according to the loan agreement.

Tower put the total amount of the charges for insurance premiums in the "Amount Financed" box on the disclosure statement, and did not include them in the finance charge, which was disclosed in a separate box. Regulation Z, 12 C.F.R. pt. 226 (1981),[4] permits lenders to exclude such insurance premiums from the finance charge. However, "if the term of the insurance is less than the term of the credit obligation," then Regulation Z "requires disclosure of the term of the insurance." *Philbeck v. Timmers Chevrolet, Inc.*, 499 F.2d 971, 978 (5th Cir. 1974).

The Wrights contend that Tower violated Regulation Z by excluding the insurance premiums from the finance charge and failing to disclose on the disclosure statement

---

**2.** "The objective is to furnish the customer a clear and meaningful disclosure of the credit terms and other information in respect to the transaction. It would be quite difficult to design an all-purpose type of disclosure statement and contract which will, in every case, satisfy the objectives [*sic*]." FRB Public Information Letter No. 780, [1974–1977 Transfer Binder] Consumer Cred. Guide-Special Releases (CCH) ¶ 31,102 (Aug. 10, 1974).

**3.** The suits were tried before the magistrate and appealed directly to this court pursuant to 28 U.S.C. § 636 (1976 & Supp. III 1979).

**4.** On March 26, 1981, pursuant to TILA § 105, *as amended by* TILSA § 605, 15 U.S.C. § 1604 (Supp. IV 1980), the Federal Reserve Board promulgated a revised Regulation Z, 46 Fed. Reg. 20,848, 20,892–949 (1981) (to be codified at 12 C.F.R. pt. 226). The revised Regulation Z became effective on April 1, 1981, although compliance with it is optional until October 1, 1982. *Id.* at 20,892, *as amended by* Consumer Leasing/Truth in Lending; Deferral of Date for Mandatory Compliance, 47 Fed.Reg. 755 (1982). Unless otherwise noted, in this opinion references to Regulation Z will be to the pre-TILSA version, and not to the revised Regulation Z.

that the insurance expired before the loan would be paid. The Wrights also contend that Tower violated Regulation Z by failing to include a date with their insurance authorization and by erroneously putting on the disclosure statement a charge of $299.77 in a box marked "Other."

The other borrower was Willie Shavers. Although the facts are different, the alleged violations are similar. His disclosure statement recited that the terms of coverage of his insurance policies were stated in the policies. His final loan payment was due on February 10, 1981, but his credit life, health, and accident insurance policy showed its term of coverage as twenty-five months from December 22, 1978, which meant that it would expire on January 22, 1981, nineteen days before his loan would be paid. Thus, as with the Wrights, the credit life, health, and accident insurance expired before the loan would be paid, and the insurance policy showed an expiration date although the disclosure statement did not. His property insurance policy, however, unlike the Wrights', stated no dates of commencement or expiration. His disclosure statement contained an erroneous charge, for $807.22, in the box marked "Other."

The only witness at the consolidated trial was Tower's general supervisor, who testified, over objection, that Tower has an oral agreement with each of the insurance companies with which it does business that the terms of their insurance policies will be coextensive with Tower's loans. No other evidence of this agreement was introduced. The supervisor also testified that Tower tells each borrower that the loans and insurance policies are coextensive. Tower urges that this oral representation to its borrowers obligates it to provide such insurance coverage and that its oral agreement with its insurers in turn requires the insurers to provide such coverage. If this testimony were in fact correct, then the effect

of showing the expiration dates on the policies would be nullified, for the true expiration dates would be different from those shown.

The magistrate rejected Tower's attempt to contradict the insurance policies and the disclosure statements' recitals that the terms of the insurance policies were shown on the policies. He found that the loans and insurance policies were not in fact coextensive, but that in each transaction the policies would have expired substantial periods of time before the loans would have been paid. He held that Tower violated TILA by failing to disclose on the disclosure statements the terms of the insurance policies. He also held that Tower violated TILA by putting the erroneous "Other" charges on the disclosure statements.

The magistrate awarded each of the Wrights $495.46, which equals the statutory penalty of twice the "actual" finance charge. 15 U.S.C. § 1640(a)(2). He derived the actual finance charge by taking the finance charge given in the Wrights' disclosure statement and adding the insurance premiums to it;[5] because he concluded that Tower had violated the procedures a lender must follow before it can exclude insurance premiums from the finance charge, these premiums should have been included in the finance charge stated on the disclosure form. Using the same approach, he calculated Shavers's actual finance charge to be $590.28.[6] He awarded Shavers the maximum statutory recovery of $1000, however, because twice Shavers' actual finance charge exceeded that maximum. He also awarded costs and attorney's fees to both Shavers and the Wrights.

Tower counterclaimed against Shavers for the unpaid balance of his loan. The magistrate allowed this counterclaim, plus attorney's fees, but refused to offset these amounts against Shavers' award of costs and attorney's fees.

---

5. The Wrights' stated finance charge was $172.40. Their life, health, and accident insurance premiums totaled $40.95; their property insurance premium, $34.38.

6. Shavers's stated finance charge was $432.91. His life, health, and accident insurance premiums totaled $82.37; his property insurance premium, $75.

## II

Neither TILA nor Regulation Z explicitly requires disclosure of the term of credit life, health, accident, or property insurance. Only the "cost" of insurance that is written for the sale or loan must be disclosed.[7] Neither the statute nor the regulation, as originally adopted, distinguished between the cost paid for insurance purchased when the loan is made and the total cost of the insurance for the full term of the loan if the term of the insurance is shorter than the term of the loan. "To clarify the delphic, the [Federal Reserve Board] promulgated 12 C.F.R. § 226.-402. . . ." *Reneau v. Mossy Motors*, 622 F.2d 192, 194 (5th Cir. 1980) (per curiam).[8]

7. 15 U.S.C. § 1605 provides in pertinent part:
*Determination of finance charge*
(a) *Definition*
Except as otherwise provided in this section, the amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit, including any of the following types of charges which are applicable:
. . . .
(5) Premium or other charge for any guarantee or insurance protecting the creditor against the obligor's default or other credit loss.
(b) *Life, accident, or health insurance premiums included in finance charge.*
Charges or premiums for credit life, accident, or health insurance written in connection with any consumer credit transaction shall be included in the finance charges unless
(1) the coverage of the debtor by the insurance is not a factor in the approval by the creditor of the extension of the credit, and this fact is clearly disclosed in writing to the person applying for or obtaining the extension of credit; and
(2) in order to obtain the insurance in connection with the extension of credit, the person to whom the credit is extended must give specific affirmative written indication of his desire to do so after written disclosure to him of the cost thereof.
(c) *Property damage and liability insurance premiums included in finance charge.*
Charges or premiums for insurance, written in connection with any consumer credit transaction, against loss of or damage to property or against liability arising out of the ownership or use of property shall be included in the finance charge unless a clear and specific statement in writing is furnished by the creditor to the person to whom the credit is extended, setting forth the cost of the insurance if obtained from or through the creditor, and stating that the person to whom the credit is extended may choose the person through which the insurance is to be obtained.
12 C.F.R. § 226.4 provides in pertinent part:

*Determination of finance charge.*
(a) *General rule.* Except as otherwise provided in this section, the amount of the finance charge in connection with any transaction shall be determined as the sum of all charges, payable directly or indirectly by the customer, and imposed directly or indirectly by the creditor as an incident to or as a condition of the extension of credit, whether paid or payable by the customer, the seller, or any other person on behalf of the customer to the creditor or to a third party, including any of the following types of charges:
. . . .
(5) Charges or premiums for credit life, accident, health, or loss of income insurance, written in connection with any credit transaction unless
(i) The insurance coverage is not required by the creditor and this fact is clearly and conspicuously disclosed in writing to the customer, and
(ii) Any customer desiring such insurance coverage gives specific dated and separately signed affirmative written indication of such desire after receiving written disclosure to him of the cost of such insurance.
(6) Charges or premiums for insurance, written in connection with any credit transaction, against loss of or damage to property or against liability arising out of the ownership or use of property, unless a clear, conspicuous, and specific statement in writing is furnished by the creditor to the customer setting forth the cost of the insurance if obtained from or through the creditor and stating that the customer may choose the person through which the insurance is to be obtained.
(Footnotes omitted.)

8. 12 C.F.R. § 226.402 provides:
*Term of insurance coverage.*
(a) Under § 226.4(a)(5) and (6) certain disclosures of insurance premium costs, if applicable, are required. The question arises as to whether such amounts of cost disclosed must include the cost of insurance for the full term of the transaction.
(b) Under § 226.4(h) the cost of insurance for the full period of insurance coverage which the creditor will require shall be disclosed if the cost of the insurance premium is required to be included in the finance charge.

Subsection (b) of 12 C.F.R. § 226.402 provides that a creditor may exclude an insurance premium from the finance charge if the creditor discloses the premium for the initial term of the insurance policy. Subsection (b) also provides that, if the creditor does exclude the premium from the finance charge, the creditor must then disclose the term of the insurance policy if it is shorter than the term of the loan. Without disclosure of the term of a policy that is shorter than the term of a loan, "the creditor has not effectively disclosed the cost of the insurance." *Reneau v. Mossy Motors*, 622 F.2d at 195. "The consumer who desired insurance for the full term of the transaction would find it necessary either to renew the policy initially acquired or to take out an additional policy or policies, thus resulting in additional cost to the consumer. The [Federal Reserve] Board was concerned with making the consumer aware of this possible additional cost." *Philbeck v. Timmers Chevrolet, Inc.*, 499 F.2d at 979.

█ When a creditor must disclose the term of an insurance policy, it may do so in the disclosure statement, the document in which the other credit disclosures are made;

but disclosure in that document is not essential. The creditor may elect to disclose the term in a separate document, such as the insurance policy. *Lyles v. Commercial Credit Plan*, 660 F.2d 129, 131–32 (5th Cir. 1981); *see Burton v. G. A. C. Fin. Co.*, 525 F.2d 961, 964 (5th Cir. 1976) ("The borrower's written election to obtain optional credit insurance . . . is not a lender disclosure within the meaning of 12 C.F.R. § 226.-8(a)."); [9] *Mullen v. North Pac. Bank*, 25 Wash.App. 864, 869–72, 610 P.2d 949, 953–54 (1980). As one commentator has noted, the insurance disclosure section of Regulation Z "contains *no* requirements as to the location of the disclosure it mandates as a condition to excluding the amount of certain insurance premiums from the finance charge." 1 R. Clontz, Truth-in-Lending Manual ¶ 2.04[4][d], at 2–34 (4th ed. 1976) (emphasis in original).[10]

█ In general, a creditor may comply with Regulation Z by making insurance disclosures in "a format which would insure that the customer is aware of the cost [of insurance] before signing the [insurance] authorization." FRB Public Information Letter No. 408, *supra* note 10. Although as

However, if the cost of insurance is not required to be included in the finance charge, the cost to be disclosed need only be the cost of premiums for the term of the initial policy or policies written in connection with the transaction, accompanied by a statement of the type of insurance and the term thereof.

**9.** 12 C.F.R. § 226.8, which was at issue in both *Lyles* and *Burton*, provides in pertinent part: *Credit other than open end—specific disclosures.*

(a) *General rule.* Any creditor when extending credit other than open end credit shall, in accordance with § 226.6 and to the extent applicable, make the disclosures required by this section with respect to any transaction consummated on or after July 1, 1969. Except as otherwise provided in this section, such disclosures shall be made before the transaction is consummated. At the time disclosures are made, the creditor shall furnish the customer with a duplicate of the instrument or a statement by which the required disclosures are made and on which the creditor is identified. All of the disclosures shall be made together on either:

(1) The note or other instrument evidencing the obligation on the same side of the page and above the place for the customer's signature; or

(2) One side of a separate statement which identifies the transaction.

**10.** *See generally* FRB Official Staff Interpretation FC–0053, 12 C.F.R. pt. 226 app. at 650, *reprinted in* [1974–1977 Transfer Binder] Consumer Cred. Guide-Special Releases (CCH) ¶ 31,551 (Apr. 4, 1977); FRB Official Staff Interpretation FC–0043, 12 C.F.R. pt. 226 app. at 642, *reprinted in id.* ¶ 31,534 (Feb. 2, 1977); FRB Official Staff Interpretation FC–0037, 12 C.F.R. pt. 226 app. at 638, *reprinted in id.* ¶ 31,514 (Jan. 17, 1977); FRB Public Information Letter No. 1234, [1974–1977 Transfer Binder] Consumer Cred. Guide-Special Releases (CCH) ¶ 31,673 (Sept. 2, 1977); FRB Public Information Letter No. 1037, *id.* ¶ 31,377 (Apr. 22, 1976); FRB Public Information Letter No. 1036, *id.* ¶ 31,376 (Apr. 22, 1976); FRB Public Information Letter No. 853, *id.* ¶ 31,175 (Oct. 30, 1974); FRB Public Information Letter No. 408 (Sept. 25, 1970), *reprinted in* 2 R. Clontz, *supra*, at D–152; FRB Public Information Letter No. 264 (Feb. 20, 1970), *reprinted in id.* at D–96.

a practical matter insurance disclosures made by cross-references to other documents are more likely to cause problems for a lender "[f]rom an enforcement standpoint," *id.*, such disclosures nevertheless comply with Regulation Z if they are written and arranged properly. *See* FRB Public Information Letter No. 1234, *supra* note 10; *cf. Jones v. Fitch*, 665 F.2d 586, 589–90 (5th Cir. 1982) (rescission action) (identification of property securing loan); *Lamar v. American Fin. Sys., Inc.*, 577 F.2d 953, 954 (5th Cir. 1978) (disclosure of security interest).[11]

We conclude, therefore, that we must reverse the magistrate's holding that Tower violated TILA by failing to disclose the terms of the Wrights' insurance policies, and the term of Shavers's life, health, and accident insurance policy, on the disclosure statements. The disclosure statements said that the terms of the insurance policies could be found on the insurance policies. Tower disclosed the terms of these policies on the policies themselves. This disclosure satisfies the requirements of TILA.

For different reasons, we conclude that we must reverse the magistrate's holding that Tower violated TILA because of the disclosures it made, or failed to make, concerning Shavers's property insurance. As noted above, neither Shavers's disclosure statement nor his property insurance policy disclosed the term of his property insurance. Both Shavers and the magistrate treated

Shavers's property insurance policy in the same way they treated the other three insurance policies. In doing so, however, they apparently assumed that the term of Shavers's property insurance policy, like the terms of the other three insurance policies, was less than the term of his loan.

This assumption is erroneous. Shavers never adduced,[12] and the magistrate never cited, any evidence that the term of Shavers's property insurance was less than the term of his loan. Such evidence is essential to a finding that the disclosure for Shavers's property insurance violated TILA. Because we cannot assume the existence of such evidence, and because Shavers has suggested none to us, we hold that the term of Shavers's property insurance must be assumed to have been coextensive with the term of his loan. *See, e.g., Dzadovsky v. Lyons Ford Sales*, 593 F.2d 538, 539 (3d Cir. 1979) (per curiam) ("*proven* violations of the disclosure requirements") (emphasis added); *cf. Teel v. Thorp Credit Inc.*, 609 F.2d 1268, 1270 (7th Cir. 1979) (creditor's affirmative defense to proved violation of TILA). Tower thus had no duty to disclose the term of Shavers's property insurance anywhere. *Philbeck v. Timmers Chevrolet, Inc.*, 499 F.2d at 978–81.[13]

### III

We now turn to the magistrate's holding that Tower violated TILA when it errone-

---

**11.** The revised Regulation Z explicitly provides that insurance disclosures "may be made together or separately from other required disclosures." 46 Fed.Reg. at 20,901 n.38 (to be codified at 12 C.F.R. § 226.17 n.38).

**12.** Shavers's brief states: "Terms of th[e] credit insurance coverages, *established by the policy certificates issued by Tower, ended at 25 months* and did not cover the first payment extension." (Emphasis added.) Because Shavers's property insurance certificate states no term whatsoever, it cannot be read to establish that it ended on any particular date preceding the date on which Shavers's loan was paid.

**13.** We need not discuss whether Tower could be found liable for reciting on Shavers's disclosure statement that the term of Shavers's property insurance could be found on the property insurance policy, but then failing to state that

term on the policy. If this recital violates TILA, it does so only because it is misleading, and thus violates TILA's and Regulation Z's general disclosure requirements, and not because it violates the specific credit insurance disclosure requirements. It could not, therefore, be used to increase Shavers's recovery by adding the property insurance premium to the finance charge. And because we find, pp. 443–446 *infra*, that Tower violated the general disclosure requirements by putting the erroneous "Other" charges on the disclosure statements, Shavers's recovery would be unaffected even if we were to find that the reference in the disclosure statement to a nonexistent term of insurance on the property insurance policy is misleading. 15 U.S.C. § 1640(g) (limiting plaintiff to single recovery for multiple failures to make required disclosures).

ously put charges in the boxes marked "Other" on both Shavers's and the Wrights' disclosure statements. The magistrate noted in his opinion that these were "charges for which there were no explanations." Moreover, at trial, Tower's attorney acknowledged that these charges had been "insert[ed] . . . for no reason," and that "[t]hey have no significance whatsoever." When the magistrate asked Tower's attorney why Tower put these charges on the disclosure statements, the attorney replied: "That's a mystery to us and to the court, [one that] will probably remain forever." Shavers and the Wrights argue that, because these "Other" disclosures are meaningless, misleading, and confusing, they violate Regulation Z, 12 C.F.R. §§ 226.-1(a)(2), .6(c).[14] We agree.

Tower concedes, and we have repeatedly held, that lenders must comply strictly with TILA and Regulation Z. *Williams v. Western Pac. Fin. Corp.*, 643 F.2d 331, 339 (5th Cir. 1981) (per curiam).[15] "[O]nce the court finds a violation [of TILA], no matter how technical, it has no discretion with respect to the imposition of liability." *Grant v. Imperial Motors*, 539 F.2d 506, 510 (5th Cir. 1976).

█ Whether a lender has violated TILA or Regulation Z by making an additional, nonrequired disclosure depends on the facts of each case. The lender, however, bears the burden of proving compliance. "The determination of what may or may not mislead, confuse, or detract attention is a judgmental factor, and a creditor providing

additional information with the required disclosures should be prepared to justify his contention that the disclosures meet the § 226.6(c) requirements . . . to the courts." FRB Public Information Letter No. 832, [1974–1977 Transfer Binder] Consumer Cred. Guide—Special Releases (CCH) ¶ 31,-154 (Aug. 27, 1974). We conclude that Tower has failed to carry its burden of justifying its putting the "Other" charges on Shavers's and the Wrights' disclosure statements.

The disclosure of the "Other" charges "had the capacity to mislead or confuse a potential borrower." *Weaver v. General Fin. Corp.*, 528 F.2d 589, 590 (5th Cir. 1976) (per curiam). It provided information that was worse than meaningless: it said that the plaintiffs were subject to additional charges that in fact did not exist. *See Gresham v. Termplan Inc. W. End*, 648 F.2d 312, 314 (5th Cir. 1981); *Gennuso v. Commercial Bank & Trust Co.*, 566 F.2d 437, 443 (3d Cir. 1977) (per curiam) ("reference in bold print on the Note and Security Agreement to a non-existent warranty of attorney to confess judgment"); *Ives v. W. T. Grant Co.*, 522 F.2d 749, 761 n.29 (2d Cir. 1975) ("Describing a security interest when there is none . . . would constitute additional but misleading information."). The charges, moreover, appear in the section of the disclosure statement where most of the required disclosures appear. Their location thus makes them more likely to "obscure, contradict, or detract attention from the required disclosures." FRB Public Infor-

---

14. Section 226.1(a) provides in pertinent part:
   This part [12 C.F.R. pt. 226] implements the Act, the purpose of which is to assure that every customer who has need for consumer credit is given *meaningful* information with respect to the cost of that credit which, in most cases, must be expressed in the dollar amount of finance charge, and as an annual percentage rate computed on the unpaid balance of the amount financed. Other *relevant* credit information must also be disclosed so that the customer may readily compare the various credit terms available to him from different sources and avoid the uninformed use of credit.
   (Emphasis added.) Section 226.6(c) provides in pertinent part:

   *Additional Information.* At the creditor's or lessor's option, additional information or explanations may be supplied with any disclosure required by this part, *but none shall be stated, utilized, or placed so as to mislead or confuse the customer or lessee or contradict, obscure, or detract attention from the information required by this part to be disclosed.* (Emphasis added.)

15. *Accord, Smith v. Chapman*, 614 F.2d 968, 971 (5th Cir. 1980); *Reneau v. Mossy Motors*, 622 F.2d at 195; *Blair v. National Constr. Co.*, 611 F.2d 80, 83 (5th Cir. 1980); *Charles v. Krauss Co.*, 572 F.2d 544, 546 (5th Cir. 1978).

mation Letter No. 1322, 5 Consumer Cred. Guide (CCH) ¶ 31,825 (Oct. 31, 1978); *accord, Gresham v. Termplan Inc. W. End*, 648 F.2d at 314 ("Rather than disclosing meaningful additional information [it] confuses the borrower and detracts information from the required federal disclosure.").[16]

TILA neither requires nor encourages borrowers to guess or to assume that a disclosure has a particular meaning, or that it in fact has no meaning. *Pennino v. Morris Kirschman & Co.*, 526 F.2d 367, 372 (5th Cir. 1976) ("This court . . . is bound by the intent of Congress to eliminate the necessity of assumptions on the part of the consumer."); *Barber v. Kimbrell's, Inc.*, 424 F.Supp. 42, 48 (W.D.N.C.1976), *aff'd in pertinent part*, 577 F.2d 216, 221–22 (4th Cir.), *cert. denied*, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978). Nor does TILA permit lenders to add meaningless information to disclosure statements, for to do so would encourage borrowers to ignore or to avoid reading these statements, and would thereby frustrate the purpose of the statute. "The entire thrust of contemporary credit legislation is to make credit contract terms comprehensible. Decisions which in effect encourage debtors not to take these terms seriously . . . undermine the purpose of the legislation." *Williams v. Blazer Fin. Servs.*, 598 F.2d 1371, 1374 (5th Cir. 1979); *accord, Anthony v. Community Loan & Inv. Corp.*, 559 F.2d 1363, 1370 (5th Cir. 1977).[17]

Tower's arguments do nothing to impeach this reasoning or its ineluctable conclusion. Tower first argues that TILA does not forbid Tower to provide the boxes marked "Other" on the disclosure statements. The issue in this case, however, is not that the word "Other" inadequately described the information contained in the boxes,[18] but that the information in the boxes was itself meaningless and confusing. Thus Tower's additional argument, that it often uses the boxes "to list disbursements for which a space is not otherwise provided on the statement," also misses the mark. Merely because the boxes might be convenient for presenting useful information does not excuse Tower for using them to present meaningless and useless information.

Tower then argues that the "Other" charges "did not mislead, confuse or in any way hinder the borrowers." This argument, however, is specious, for we have often, and explicitly, held that a plaintiff need not prove that he was actually deceived to recover under TILA.[19]

Tower also argues that it gave Shavers and the Wrights all the information they needed to purchase credit intelligently. Again, Tower misstates the issue. We are dealing here with misleading disclosure, not nondisclosure; a lender may be found liable under TILA for either. "A misleading disclosure is as much a violation of TILA as a failure to disclose at all." *Smith v. Chapman*, 614 F.2d 968, 977 (5th Cir. 1980); *see*

16. *Compare Friend v. Termplan Inc.*, 651 F.2d 1012, 1014 (5th Cir. 1981) *and Jones v. Goodyear Tire & Rubber Co.*, 442 F.Supp. 1157, 1163 (E.D.La.1978) ("additional information . . . squeezed together with pertinent information required by the Act") *with Eovaldi v. First Nat'l Bank*, 596 F.2d 188, 194–96 (7th Cir. 1979) *and Enright v. Beneficial Fin. Co.*, 527 F.Supp. 1149, 1156, 1157 (N.D.N.Y.1981) (additional information "separated from the numerical disclosures") *and Pullum v. C.I.T. Fin. Servs.*, 495 F.Supp. 271, 273 (E.D.Mo.1980) ("[additional] disclosure . . . separated from all other disclosures"). *See also* FRB Public Information Letter No. 780, *supra* ("intermingling of contractual provisions with disclosures").

17. *See LaGrone v. Johnson*, 534 F.2d 1360, 1362 (9th Cir. 1976) (per curiam) ("If lenders were permitted to include additional informa-

tion in any form they wish, unsophisticated consumers would be handicapped in making ready comparisons.").

18. In their brief, Shavers and the Wrights contend that the word "Other" was "an absolutely meaningless label." Given our disposition on this issue of the "Other" disclosures, however, we need not address this contention.

19. *Reneau v. Mossy Motors*, 622 F.2d at 195; *Smith v. Chapman*, 614 F.2d at 971 ("It is not necessary that the plaintiff-consumer have been deceived in order for there to be a violation."); *Charles v. Krauss Co.*, 572 F.2d at 546; *McGowan v. King, Inc.*, 569 F.2d 845, 849 (5th Cir. 1978) ("there is no requirement that the plaintiff himself actually have been deceived").

*Williams v. Public Fin. Corp.*, 598 F.2d 349, 355 (5th Cir. 1979).

Finally, Tower argues that TILSA, *supra* note 1, provides "further evidence" that Tower's "Other" charges did not contravene TILA.[20] But Tower fails to cite any support in TILSA for its argument,[21] and we have found none. Furthermore, neither TILSA nor the revised Regulation Z promulgated pursuant to it, *supra* note 4, suggests that lenders have been given license to make misleading disclosures. *See* TILSA § 611, 15 U.S.C. § 1631(d) (Supp. IV 1980) ("to prevent . . . misleading disclosures").[22] We must, therefore, reject Tower's argument that TILSA suggests that Tower's "Other" disclosures did not violate TILA.

Tower's reliance on 15 U.S.C. § 1640, *as amended by* TILSA § 615, is misplaced. There is no showing that Tower's violation was rectified in a timely manner or that Tower's violation "was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error,"[23] and no evidence that Tower acted "in good faith in conformity with" any agency rule, regulation, or interpretation.

Nor is there any showing that, as Tower argues, its violation resulted from an "interpretation of technical disclosure requirements without clear foundation in either statutory language or policy." *Barbieri v. Commercial Credit Loans, Inc.*, 596 F.2d 660, 662 (5th Cir. 1979). Tower's violation resulted instead from Tower's ignoring the

clear mandates of both Regulation Z and the cases interpreting it.

## IV

At trial, the Wrights contended that Tower violated TILA by failing to obtain a dated insurance authorization from them. Although the magistrate found it unnecessary to address this contention, the Wrights raise it again in this appeal.[24] We now address this contention because, given our conclusion regarding the disclosure of the terms of the insurance policies, p. 443 *supra*, a violation of the insurance authorization requirements would give the Wrights a recovery greater than they otherwise would obtain under our disposition of this case.

We conclude that the Wrights have established a violation of the insurance authorization requirements. Regulation Z, 12 C.F.R. § 226.4(a)(5), requires that a lender obtain a "dated" authorization from a borrower if the lender wishes to exclude from the finance charge the premiums for credit life, health, or accident insurance. The Wrights' insurance authorization, and the disclosure statement on which it appears, are both undated. We hold that Tower thereby violated TILA. *See Hayslip v. Dunlap Chevrolet Co.*, 560 F.2d 192, 193–94 (5th Cir. 1977); *Meehan v. Nelsonville Mobile Home Sales (In re Warren)*, 387 F.Supp. 1395, 1403–04 (S.D.Ohio 1975); *Porter v. Household Fin. Corp.*, 385 F.Supp. 336, 338, 345 (S.D.Ohio 1974). In calculating the Wrights' recovery, therefore, the premiums

---

**20.** Courts have used TILSA to interpret TILA, *e.g., Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 207–20, 101 S.Ct. 2266, 2270–74, 68 L.Ed.2d 783, 789–95 (1981); *James v. Ford Motor Credit Co.*, 638 F.2d 147, 148–49, 152 (10th Cir. 1980), *cert. denied*, 453 U.S. 901, 101 S.Ct. 3134, 69 L.Ed.2d 988 (1981), which is what Tower now asks us to do. Tower has not asked us to apply TILSA retroactively.

**21.** Tower's brief cites "Section 130" of TILSA. TILSA has no § 130. Presumably Tower meant to cite TILSA § 615, which amends TILA § 130, 15 U.S.C. § 1640.

**22.** *Accord,* TILSA § 614(b), 15 U.S.C. § 1638(b)(1) (Supp. IV 1980) ("all disclosures required . . . shall be conspicuously segregated from all other terms, data, or information pro-

vided in connection with a transaction"); 46 Fed.Reg. at 20,892 (revised Regulation Z) (to be codified at 12 C.F.R. § 226.1(b)) ("The purpose of this regulation is to promote the informed use of consumer credit"); *id.* at 20,901 (to be codified at 12 C.F.R. § 226.17(a)(1)) ("disclosures shall be grouped together, shall be segregated from everything else, and shall not contain any information not directly related to the disclosures required") (footnote omitted).

**23.** Tower initially raised a clerical-error defense under 15 U.S.C. § 1640(c). Later, at trial, Tower withdrew that defense.

**24.** Tower's brief never discusses this issue.

for their life, health, and accident insurance must be added to the stated finance charge.

## V

 In *Plant v. Blazer Fin. Servs., Inc.*, 598 F.2d 1357, 1358 (5th Cir. 1979), we held that "a successful plaintiff in a truth-in-lending suit is entitled to have her attorneys paid from the award for attorney's fees and not have those fees setoff against a counterclaim judgment on the debt in favor of the defendant against the plaintiff creditor." For no reason other than the recital that *Plant* deals with attorney's fees but not court costs, Tower contends that *Plant* is inapplicable to court costs, and therefore seeks to offset its counterclaim against Shavers's award of costs. Such a distinction would lack reason even more than it misses rhyme.

In *Plant,* we stated our reasons for concluding that attorney's fees should not be offset. The recovery of attorney's fees is a "critical and integral part" of the sanctions for enforcement of TILA. *Id.* at 1365. The allowance of such fees in a successful action "makes legal representation available in a manner analogous to the contingent fee system." *Id.* at 1366.

"Were the attorney's fee award subject to setoff," we continued, "the expectation of fees from a successful action might well be limited to the resources of the debtor in any case where the outstanding debt, being in default and subject to counterclaim, exceeded the recovery. To allow a setoff would in effect relieve the creditors in violation of the Act of the attorney's fee expense in the case of an insolvent debtor. Such a result would thwart the statute's individual enforcement scheme and its remedial objectives." *Id.* The same considerations dictate denial of setoff for court costs.

## VI

For these reasons, the judgment is REVERSED in part and AFFIRMED in part.

The case is REMANDED for the fixing of reasonable attorney's fees both for the trial and for this appeal, *see Memphis Sheraton Corp. v. Kirkley,* 614 F.2d 131, 133 (6th Cir. 1980); *Hidell v. International Diversified Invs.,* 520 F.2d 529, 532 & n.4, 539 (7th Cir. 1975),[25] and for the setting of the recoveries due both Shavers and the Wrights in the light of this opinion.

**25.** *See generally Cassidy v. Virginia Carolina Veneer Corp.,* 652 F.2d 380, 383 (4th Cir. 1981); *Bradford Exch. v. Trein's Exch.,* 644 F.2d 682, 683 (7th Cir. 1981).